UNITED STATES of America,
Plaintiff–Appellee,

v.

Christopher ARUTUNOFF,
Defendant–Appellant.

UNITED STATES of America, Plaintiff–
Appellee, Cross–Appellant,

v.

Steven J. DeVRIES, Defendant–
Appellant, Cross–Appellee.

Nos. 91–5146, 91–5147, 91–5166.

United States Court of Appeals,
Tenth Circuit.

Aug. 3, 1993.

**1114**

Jill M. Wichlens, Asst. Federal Public Defender, Denver, CO (Michael G. Katz, Federal Public Defender, with her on the briefs) for defendant-appellant/cross-appellee.

Kenneth P. Snoke, Asst. U.S. Atty., Tulsa, OK (Tony M. Graham, U.S. Atty., with him on briefs), for plaintiff-appellee/cross-appellant.

Before McKAY, Chief Judge, GODBOLD, Senior Circuit Judge,[1] and SEYMOUR, Circuit Judge.

GODBOLD, Senior Circuit Judge.

These consolidated appeals arise from appellants' convictions for participating in a scheme to defraud investors. Appellant DeVries was convicted of one count of conspiracy to commit securities fraud, 18 U.S.C. § 371, 15 U.S.C. § 77q, three counts of selling unregistered securities, 15 U.S.C. § 77e(a)(1), and one count of securities fraud, 15 U.S.C. § 77q(a)(2)–(3). He appeals from his convictions and the district court's restitution order. Appellant Arutunoff likewise was convicted of conspiracy to commit securities fraud but only appeals from the district court's restitution order. The government cross-appeals from the district court's decision at sentencing to depart downward in DeVries's case. We affirm DeVries's convictions but vacate DeVries's sentence. We vacate the restitution awards against both appellants and remand for further proceedings.

## I. FACTUAL BACKGROUND

We view the evidence in the light most favorable to the jury's verdict. *U.S. v. Harrison,* 942 F.2d 751, 754 (10th Cir.1991); *U.S. v. Wright,* 932 F.2d 868, 872 (10th Cir.), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 428, 450, 116 L.Ed.2d 448, 467 (1991).

In January 1988 John McFarlin set up a business called McFarlin Trading Co. (MTC) for the purpose of trading commodities futures. Purchases of futures were to be funded by investors. McFarlin was to receive a

---

1. The Honorable John C. Godbold, Senior U.S. Circuit Judge for the Eleventh Circuit, sitting by designation.

commission of 25% of the profits generated by any trade made by MTC. McFarlin hired Arutunoff to assist with the trades and DeVries to attract investors. McFarlin initially agreed to pay DeVries 25% of the commissions earned on accounts obtained by DeVries. This was later increased to 35%.

To facilitate investment with MTC, DeVries formed a limited partnership called DeVries Trading Limited Partnership (DTLP). Individual investors placed funds with DTLP, and the aggregate of DTLP's funds was invested with MTC. These investors, like all of MTC's clients, received monthly statements prepared by McFarlin and Arutunoff that showed the trades made on their behalf and the resulting profit or loss. DeVries prepared brochures, business cards, and other materials designed to encourage investment with DTLP and/or MTC. These materials were sent to potential investors.

The brochures prepared by DeVries contained several misrepresentations. DeVries misrepresented his qualifications and those of McFarlin and Arutunoff, as well as whether DTLP was registered with the Securities Exchange Commission, and misrepresented the risk associated with investment. McFarlin contributed to the misrepresentations in the brochures by providing DeVries with false data concerning MTC's track record. In addition, when DeVries formed DTLP he did not register it as a security.[2]

The first investor obtained by DeVries was Helen Menning. Although McFarlin made trades with Menning's money he failed to generate any profits. Rather than reveal this fact McFarlin and Arutunoff agreed to send Menning a false monthly statement. Thereafter the monthly statements sent to Menning and every other investor were false. By sending out doctored statements McFarlin hoped to present an illusion of profitability so he could continue to attract investors. To conceal this fraud McFarlin decided to pay DeVries in accordance with the false statements and also to pay investors the stated profits if they chose to withdraw their money. It is agreed that DeVries did not know that McFarlin and Arutunoff had decided to send out false statements.

Throughout 1989 and early 1990 McFarlin and Arutunoff continued to send out false statements while trying to make up the losses through further trades. But they only fell further behind because they continued to lose money trading and also began to spend investor funds on personal expenses. In May 1990 DeVries confronted McFarlin who admitted that he had been sending out false statements. On May 10 DeVries sent a letter to the investors informing them that McFarlin had sent out false statements and had mismanaged their funds but stated that McFarlin promised to make restitution.

When criminal charges were brought McFarlin negotiated a plea[3] and agreed to testify at trial against Arutunoff and DeVries. DeVries was convicted of one count of conspiracy to commit securities fraud, three counts of selling unregistered securities, and one count of securities fraud. Arutunoff was convicted of conspiracy to commit securities fraud.

The presentence report calculated the total loss to investors as $2,632,851.41. McFarlin received a sentence of 30 months imprisonment plus three years supervised release and was ordered to make restitution for the entire loss. Arutunoff also received a sentence of 30 months imprisonment plus three years supervised release and was ordered to make restitution of $877,617.13. The presentence report calculated DeVries's offense level as 20 and placed him in criminal history category I, resulting in a guideline range of 33 to 41 months imprisonment. The court, however, departed downward to offense level 10 and criminal history category I and imposed a six month sentence. DeVries was ordered to make restitution of $877,617.

---

2. At trial the government contended that the interests in DTLP sold by DeVries were securities subject to the registration requirement of 15 U.S.C. § 77e. On appeal DeVries has not challenged this contention.

3. McFarlin pleaded guilty to one count of conspiracy to violate the securities laws and two counts of mail and wire fraud.

DeVries appeals from his convictions and the restitution order.[4] Arutunoff challenges the restitution award. In DeVries's case the government cross-appeals from the court's decision to depart downward.

## II. DISCUSSION

### A. Conspiracy

DeVries contends that the evidence was insufficient to support the jury's verdict that he conspired to commit securities fraud with McFarlin and Arutunoff.[5] When reviewing a jury verdict, we examine, in the light most favorable to the government, all of the evidence together with the reasonable inferences to be drawn therefrom and ask whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *U.S. v. Pina,* 974 F.2d 1241, 1244 (10th Cir.1992); *U.S. v. Morehead,* 959 F.2d 1489, 1499 (10th Cir.), *adhered to on reh'g en banc, U.S. v. Hill,* 971 F.2d 1461 (10th Cir.1992). A conspiracy conviction cannot be sustained if " 'the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference.' " *U.S. v. Evans,* 970 F.2d 663, 671 (10th Cir.1992) (*quoting U.S. v. Horn,* 946 F.2d 738, 741 (10th Cir.1991)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993).

Proving a conspiracy requires the government to show:

"[1] that two or more persons agreed to violate the law, [2] that the defendant knew at least the essential objectives of the conspiracy, ... [3] that the defendant knowingly and voluntarily became a part of it," and [4] that the alleged coconspirators were interdependent.

*Id.* at 668 (*quoting U.S. v. Fox,* 902 F.2d 1508, 1514 (10th Cir.), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990)). DeVries asserts that the government failed to prove that he agreed with anyone else to violate the law. The government contends that the evidence would permit a reasonable jury to find that DeVries and McFarlin agreed to commit securities fraud by sending out materials containing misrepresentations to induce people to open investment accounts with MTC.

 The essence of a conspiracy is an agreement to commit an unlawful act. *U.S. v. Esparsen,* 930 F.2d 1461, 1471 (10th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). The agreement need not be formal or explicit but rather may be inferred from facts and circumstances. *Morehead,* 959 F.2d at 1500. " '[T]he critical inquiry is whether the circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists.' " *Id.* (*quoting U.S. v. Kendall,* 766 F.2d 1426, 1431 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986)). To reasonably infer an agreement the defendant's conduct must be interdependent with the conduct of other conspirators. *Id.* Interdependence requires more than casual transactions or mere associations; the defendant's activities must facilitate the endeavors of other conspirators or the venture as a whole. *Id.*

 The government presented evidence sufficient for a reasonable juror to infer an agreement between DeVries and McFarlin to send materials containing misrepresentations

---

4. DeVries also contends that the government failed to prove he was part of the conspiracy, therefore prejudicial retroactive misjoinder occurred, and he should be granted a new trial on his convictions for securities fraud and selling unregistered securities. But he concedes that if this court finds that the evidence supporting the conspiracy conviction was sufficient no retroactive misjoinder occurred. DeVries's Reply Brief at 4. Because we conclude that DeVries's conspiracy conviction was supported by sufficient evidence, *see infra,* we do not address the issue of retroactive misjoinder.

5. The indictment charged that DeVries, McFarlin, and Arutunoff conspired to commit mail, wire, and securities fraud and to sell unregistered securities. The jury found by special verdict that DeVries had conspired to commit all four of the unlawful objects alleged in the indictment. Because we conclude that the evidence was sufficient to establish that DeVries conspired to commit securities fraud, it is not necessary to determine whether DeVries also conspired to commit the other unlawful objects. *U.S. v. Sullivan,* 919 F.2d 1403, 1435 (10th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 285, 121 L.Ed.2d 211 (1992); *Newman v. U.S.,* 817 F.2d 635, 638 (10th Cir.1987).

to investors. Although McFarlin testified that he had voiced objections to DeVries concerning the misrepresentations in the brochures, (R. IV, at 586–92, 606–07), a reasonable juror could conclude, based on the evidence concerning McFarlin's conduct, that he agreed to the misrepresentations. First, McFarlin admitted that some of the misrepresentations were based on false data that he had supplied to DeVries. (R. IV, at 589). Second, McFarlin stated that he did he did not press his objections because he needed DeVries to continue raising money. (R. V, at 745). Finally, despite both DeVries's and McFarlin's awareness that the brochures contained misrepresentations, DeVries continued to use the materials to attract investors and McFarlin continued to accept money from those investors. Based on this evidence, reasonable jurors could infer that McFarlin and DeVries agreed to make misrepresentations for the unlawful purpose of fraudulently inducing people to invest with MTC.

■ This conclusion is reinforced by the interdependence of DeVries's actions with those of McFarlin and Arutunoff. To prevent discovery of the fraudulent monthly statements McFarlin and Arutunoff paid investors the profits falsely shown on the monthly statements whenever investors withdrew from the program. These "profits" had to be paid with contributions from new investors because the money provided by the initial investors had been lost. A constant influx of new investors therefore was critical to the success of the conspiracy. By helping to create this influx DeVries's misrepresentations facilitated the efforts of McFarlin and Arutunoff to conceal the misuse of investor funds. The interdependence of DeVries's misrepresentations with McFarlin's and Arutunoff's fraud reinforces the reasonableness of the jury's finding that DeVries and McFarlin agreed to use misrepresentations to attract investors.[6] *See Morehead,* 959 F.2d at 1500. The evidence and the reasonable inferences to be drawn therefrom were sufficient to support DeVries's conspiracy conviction.

## B. Expert Testimony

The district court permitted the government to introduce expert testimony by a law teacher. The expert's testimony began with a discussion of the requirement that a security be registered and the purpose of that requirement. (R. V, at 812–15). The witness also discussed the major exemptions to the registration requirement, *id.* at 816–19, the meaning of the terms "broker-dealer" and "registered-representative," *id.* at 820–24, and the interplay between various securities acts, *id.* at 824–27. DeVries contends that the expert's testimony concerning the exemptions from registration, the meaning of statutory terms, and the interplay between various statutes should have been excluded because only the judge may instruct the jury as to the law. *See, e.g., U.S. v. Kingston,* 971 F.2d 481, 486 (10th Cir.1992); *U.S. v. Willie,* 941 F.2d 1384, 1396 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). He further contends that the admission of this testimony prejudiced his defense on each count so all of his convictions must be reversed. In this case our review of the district court's decision to admit the law teacher's testimony is for plain error.[7]

---

6. That DeVries's misrepresentations facilitated the efforts of McFarlin and Arutunoff to conceal their fraud also indicates that there was one conspiracy encompassing DeVries, McFarlin, and Arutunoff, even though DeVries was unaware that McFarlin and Arutunoff were sending out false statements. *See Harrison,* 942 F.2d at 756 (*quoting U.S. v. Daily,* 921 F.2d 994, 1007 (10th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991)).

7. A district court's decision to permit expert testimony on a subject is generally reviewed for abuse of discretion. *See, e.g., Kingston,* 971 F.2d at 486. But if a party fails to make a contempo-

raneous objection to expert testimony review is limited to plain error. *McEwen v. City of Norman,* 926 F.2d 1539, 1544–45 (10th Cir.1991). A pre-trial motion in limine to exclude evidence does not necessarily preserve an issue for appeal. *U.S. v. Mejia–Alarcon,* 995 F.2d 982, 986 (10th Cir.1993). The evidentiary issue may be preserved for review if it was: adequately presented to the court in the motion, the type of issue that can be finally decided in a pre-trial hearing, and definitively resolved prior to trial. *Id.* at 986–988. If the court declines to rule on the motion until trial the objection must be renewed at trial. *Id.* at 982–988 (*discussing McEwen*). DeVries filed a pre-trial motion seeking to limit the teach-

We do not need to decide whether the court committed plain error, however, because DeVries has not shown that the admission of the law teacher's testimony was more than harmless error. "[E]rror in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error." *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1156 (10th Cir.1985) (*citing* Fed. R.Evid. 103(a)(1)). A nonconstitutional error is harmless unless it had a substantial influence on the jury's verdict in the context of the entire case, or leaves one in grave doubt whether it had such an effect. *U.S. v. Short*, 947 F.2d 1445, 1455 (10th Cir.1991). The expert discussed several aspects of securities law, but he did not attempt to apply the law to the facts of the case or otherwise tell the jury how the case should be decided. This distinguishes *Specht v. Jensen*, 853 F.2d 805 (10th Cir.1988) (en banc), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989), which held that experts may not testify on an ultimate issue of law. *Id.* at 809. In *Specht* the expert "painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights." *Id.* at 808. This court held that permitting the jury to hear this legal conclusion was more than harmless error. *Id.* at 808–09. But *Specht* did not answer the question before us—whether testimony concerning the requirements of the law is harmless error if the witness does not attempt to apply the law to the facts of the case.

To the extent that the expert accurately discussed the requirements of the law DeVries suffered no harm. DeVries has not asserted that the expert's testimony concerning the meaning of the terms "broker-dealer" or "registered representative" and the interplay between various securities acts misstated the law. DeVries has not shown how a correct statement of the law, without a conclusion as to how the law should be applied, affected his defense. We conclude that the admission of expert testimony concerning statutory definitions and the relationship between various securities acts was harmless error.

DeVries contends, however, that the expert misstated the law concerning the private offering exemption from the registration requirement. The expert stated that one of the requirements for the private offering exemption was that "you must make a filing on the SEC notifying them that you have availed yourself of the exemption." (R. V, at 819). This was incorrect. Section 4(2) of the Securities Act of 1933, 15 U.S.C. § 77d(2), exempts from the registration requirements of 15 U.S.C. § 77e "transactions by an issuer not involving any public offering." An offering is considered private only if limited to investors who have no need for the protection provided by registration. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953); *Lively v. Hirschfeld*, 440 F.2d 631, 632 (10th Cir.1971). To determine if an offering is sufficiently limited courts focus on such factors as: (1) the number of offerees; (2) the sophistication of the offerees, including their access to the type of information that would be contained in a registration statement; and (3) the manner of the offering. *See, e.g., Mark v. FSC Securities Corp.*, 870 F.2d 331, 333 (6th Cir.1989); *Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir.1978); *Doran v. Petroleum Mang. Corp.*, 545 F.2d 893, 900 (5th Cir.1977). But § 4(2) of the 1933 Act does not require an issuer to give notice to the SEC. DeVries contends that this misstatement undercut his theory that he did not willfully violate the registration requirement because he believed in good faith that he had qualified for the private offering exemption.

Despite the expert's misstatement of the law we conclude that the admission of the testimony was harmless because the issue whether DeVries believed in good faith that DTLP qualified for the private offering exemption was not submitted to the jury. The private offering exemption is an affirmative defense that must be proved by the person claiming the exemption. *Hirschfeld*, 440 F.2d at 632; *U.S. v. Custer Channel Wing Corp.*, 376 F.2d 675, 678 (4th Cir.), *cert.*

---

er's testimony, but the district court did not rule on the motion until trial and DeVries did not object at that time on the ground he now seeks to raise. We therefore review only for plain error.

*denied,* 389 U.S. 850, 998, 88 S.Ct. 38, 458, 19 L.Ed.2d 119, 503 (1967). DeVries did not request that the court instruct the jury concerning the requirements of this defense or object when no instructions were given.[8] Whether DeVries believed in good faith that he had qualified for the private offering exemption therefore was not before the jury. *See Strauss v. U.S.,* 376 F.2d 416, 419 (5th Cir.1967) (failure to instruct jury concerning a defense removes issue from jury's consideration). Since the jury could not consider this defense theory, the admission of the witness's misstatements concerning the defense was harmless error.

■ In any event DeVries would not have been entitled to an instruction on the private offering exemption. To have a theory of defense submitted to the jury a defendant must present evidence sufficient for a reasonable jury to find in his favor. *Mathews v. U.S.,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *see also U.S. v. Mann,* 884 F.2d 532, 537 (10th Cir.1989). The evidence concerning the private offering exemption did not meet this standard. DeVries stated that DTLP was specifically designed to appeal to the middle class. (R. VI, at 1001–02). He testified that to solicit investment in DTLP he developed a four-level marketing structure. *Id.* at 1004. This structure was basically a pyramid scheme providing financial incentives for DTLP investors and non-investors designated as independent contractors to solicit others to invest in DTLP and MTC. *Id.* at 1004–06. One person who invested in DTLP, Bill Butler, testified that he had brought in 25 other investors, (R. I, at 83) and that there were 70 independent contractors nationwide, *id.* at 115. Based on this evidence, no reasonable juror could conclude that DeVries believed in good faith that DTLP qualified for the private offering exemption. DeVries's failure to present evidence sufficient to have the private offering defense submitted to the jury

provides another basis for the conclusion that the law teacher's misstatements concerning the private offering exemption were merely harmless error.

## C. Downward Departure

The presentence report calculated DeVries's total offense level as 20, consisting of a base offense level under U.S.S.G. § 2F1.1(a) of six, plus an enhancement of 12 levels under § 2F1.1(b)(1)(M) for causing a loss of more than $1,500,000, plus a two-level enhancement under § 2F1.1(b)(2) because the offense involved more than minimal planning. *See* U.S.S.G. § 2F1.1 (Nov. 1992). Combined with DeVries's criminal history category of I, the offense level of 20 resulted in a sentencing range of 33–41 months imprisonment. The district court, however, concluded that the 12–level enhancement for loss overstated the seriousness of DeVries's offense, thus it departed downward to an offense level of 10 and criminal history category of I and imposed a six month sentence. Tr. Sentencing Hearing of Sept. 24, 1991, at 23. The government contends that the court should not have departed at all and, in the alternative, disputes the reasonableness of the departure.

■ This court employs a three-part analysis to review sentencing departures. First we exercise plenary review to determine whether the circumstances cited by the district court justify a departure. *U.S. v. Pena,* 930 F.2d 1486, 1494 (10th Cir.1991). Second, any factual determinations are reviewed for clear error. *Id.* Third, "we review the degree of departure to determine if it is reasonable." *Id.*

■ The district court concluded that a downward departure was justified because the 12–level enhancement for loss required by § 2F1.1 overstated the seriousness of DeVries's offense. Although the court acknowledged that there was sufficient evidence that DeVries had participated in a

---

8. The only reference to exemptions from registration in the jury instructions given by the court was an instruction that, once the government proves the defendant sold unregistered securities, the defendant has the burden of proving that he qualified for an exemption and that exemptions should be interpreted narrowly. (R. VIII, at 1412–13). The instructions did not name, or set out the requirements of, any exemption. The court instructed the jury that a good faith belief in the truth of a statement was a defense to fraud, (R. VIII, at 1422), but it did not give a similar instruction concerning the sale of unregistered securities.

conspiracy to cause a loss "well in excess of $2 million" it concluded:

> there was a part of the conspiracy that he was not culpable in and that's in reference to the fraudulent monthly statement to these various investors. So the total amount involved insofar as Mr. DeVries is concerned very considerably overstates the amount applicable to him, although certainly a lot of this money would not have been raised had he not put out the brochures that he did and had he not violated the securities registration laws.
>
> For the reason I've stated here and him not being specifically involved in the out and out misrepresentations and fraudulent accounting statements, nor was he involved in the type of conduct that went on down in Austin—the spending of investor's money, boats, airplanes, cocaine, et cetera—for that reason, I think the Court is justified in a downward departure from the total offense level of 20 to a total offense level of 10, which is based upon considerations that I've just stated and also is based on the consideration of the $110,000 that the evidence seems to show that Mr. DeVries benefited [sic] from this overall program. And I think a reasonable downward departure would be to a level of 10 with a criminal history of one.

Tr. Sentencing Hearing of Sept. 24, 1991, at 22–23. The commentary to § 2F1.1 provides, "In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense." U.S.S.G. § 2F1.1, comment. (n. 10). When this occurs a downward departure may be justified. *U.S. v. Shattuck,* 961 F.2d 1012, 1017 (1st Cir.1992); *U.S. Joetzki,* 952 F.2d 1090, 1096–97 (9th Cir.1991); *U.S. v. Carey,* 895 F.2d 318, 323 (7th Cir.1990). A downward departure is justified when the defendant was not the sole cause of the loss. *See Shattuck,* 961 F.2d at 1017. The district court's conclusion that DeVries was not responsible for the entire loss is sufficient justification for departing downward.

The government has not shown that the district court's factual conclusions were clearly erroneous. From the outset of the case the government conceded that DeVries was unaware of the fraudulent monthly statements. It also agreed that, once DeVries became aware of the misuse of investor funds, he acted to expose the fraud. We conclude that the record supports the district court's conclusion that DeVries should not be held responsible for the entire loss caused by the conspiracy.

 We cannot, however, find that the degree of departure was reasonable. Our review of the reasonableness of the departure focuses on the court's stated reasons for imposing the particular sentence and the factors to be considered in general when imposing a sentence. *U.S. v. O'Dell,* 965 F.2d 937, 939 (10th Cir.1992) (*quoting Williams v. U.S.,* —— U.S. ——, ——, 112 S.Ct. 1112, 1112, 117 L.Ed.2d 341 (1992)). The court is not required to explain the degree of departure with mathematical exactitude but should justify the departure by analogy to or extrapolation from the Guidelines. *U.S. v. Jackson,* 921 F.2d 985, 990–91 (10th Cir.1990) (en banc). The district court's determination of the degree of departure deserves due deference and should not be lightly overturned. *U.S. v. Bowser,* 941 F.2d 1019, 1026 (10th Cir.1991).

 As discussed above, the reason for departing downward from offense level 20 was the court's conclusion that DeVries should not be held responsible for the entire loss. The court did not, however, provide a reasonable explanation why it chose to depart downward 10 offense levels. There is no question that the base offense level of six and the two-level enhancement for more than minimal planning are applicable to DeVries. Thus, a total offense level of 10 can be justified only if the enhancement for the amount of the loss should be two levels. Under § 2F1.1(b) a two-level enhancement is appropriate for a loss of more than $5,000 and equal to or less than $10,000. *See* U.S.S.G. § 2F1.1(b)(1)(C). Although the court did not specifically find the amount of loss that should be attributed to DeVries, it stated that its sentence was based "on the consideration of the $110,000 that the evidence seems to show that Mr. DeVries benefited [sic] from this overall program." Tr. Sentencing Hearing of Sept. 24, 1991, at 23. But if the

court considered DeVries responsible for $110,000 of the loss, it should have departed downward only six levels. *See* U.S.S.G. § 2F1.1 (base offense level of six plus a six-level enhancement for causing a loss of more than $70,000 and less than or equal to $120,000 plus a two-level enhancement for more than minimal planning equals a total offense level of 14). The court's stated rationale for its sentence therefore is inconsistent with the sentence actually imposed. Under these circumstances we cannot conclude that the degree of departure was reasonable in light of the grounds for departing, thus DeVries's sentence must be vacated.

### D. Restitution

DeVries and Arutunoff both appeal from the district court's restitution order. They contend that the restitution award is illegal because the court awarded restitution in an amount exceeding the total loss caused by the conspiracy.[9] The district court found that the conspiracy caused a total loss of $2,632,851.41. Tr. Sentencing Hearing of Sept. 12, 1991, at 24. Pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, it ordered McFarlin to make restitution in the amount of $2,632,851.41, (Doc. 94, at 4), DeVries to make restitution in the amount of $877,617, (Doc. 93, at 4), and Arutunoff to make restitution in the amount of $877,617.13, (Doc. 90, at 4). Thus, the court ordered restitution in the total amount of $4,388,085.54 even though it had found that the total loss caused by the conspiracy was $2,632,851.41.

■ The VWPA's purpose is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses. *See U.S. v. Diamond*, 969 F.2d 961, 968 (10th Cir.1992); *U.S. v. Rochester*, 898 F.2d 971, 983 (5th

Cir.1990). This purpose is evinced by the VWPA itself which, for property offenses, authorizes restitution only for the value of the property lost less the value of any property returned. 18 U.S.C. § 3663(b)(1). It further provides that "The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation...." *Id.* § 3663(e)(1). In cases involving individual defendants courts have concluded that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Hughey v. U.S.*, 495 U.S. 411, 420, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990); *see also U.S. v. Patty*, 992 F.2d 1045, 1050 (10th Cir.1993); *U.S. v. Cook*, 952 F.2d 1262, 1265–66 (10th Cir.1991).

■ We conclude that the loss caused by the conduct underlying the offense of conviction also limits a court's authority to award restitution for an offense involving multiple defendants.[10] *See U.S. v. McHenry*, 974 F.2d 1031, 1034 (9th Cir.1991) (In a conspiracy case "restitution must be limited to the loss flowing from the conspiracy itself."). If each defendant were required to pay restitution for the entire loss caused by a conspiracy, victims theoretically could receive more in restitution than they had lost, a result at odds with both the VWPA's limited purpose and its language which, for property offenses, authorizes a court to award restitution only for the value of the property lost "less the value ... of any part of the property that is returned." By ordering restitution in an amount greater than the total loss caused by the conspiracy the district court exceeded its statutory jurisdiction and imposed an illegal sentence. *Cook*, 952 F.2d at 1265–66; *U.S. v. Wainwright*, 938 F.2d 1096, 1098 (10th Cir.1991). The restitution orders in DeVries's and Arutunoff's cases must be vacated.

---

9. Since we agree that the restitution order must be vacated because the amount awarded exceeded the total loss, we do not address the appellants' contention that the district court did not adequately consider their ability to pay.

10. In other cases involving multiple defendants courts have either apportioned the total loss among the defendants, *e.g.*, *U.S. v. Sharp*, 927

F.2d 170, 173 n. 2 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 139, 116 L.Ed.2d 106 (1991); *U.S. v. Anglian*, 784 F.2d 765, 768 (6th Cir.), *cert. denied*, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986), or made the obligation to pay joint and several, *e.g.*, *U.S. v. Chaney*, 964 F.2d 437, 454 & n. 52 (5th Cir.1992); *U.S. v. Angelica*, 951 F.2d 1007, 1009 (9th Cir.1991).

### III. CONCLUSION

DeVries's convictions are AFFIRMED. DeVries's sentence is VACATED. The restitution orders against DeVries and Arutunoff are VACATED. The cases of DeVries and Arutunoff are REMANDED for further proceedings consistent with this opinion.