**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARLOS ENRIQUE GARCIA-CASTILLO,

Defendant - Appellant.

No. 03-2166

(D. New Mexico)

(D.C. No. CR-02-1676-WPJ)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **LUCERO**, Circuit Judges.

---

Carlos Enrique Garcia-Castillo ("Garcia-Castillo") pleaded guilty in the District of New Mexico to a four-count superseding indictment stemming from his attempt to steal merchandise from a train near the United States-Mexico border. The charges were: (1) conspiracy to violate the laws of the United States under 18 U.S.C. § 371 by committing a theft from an interstate shipment, in violation of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

18 U.S.C. § 659; by entering a train to commit a crime, in violation of 18 U.S.C. § 1991; and by breaking or entering carrier facilities, in violation of 18 U.S.C. § 2117; (2) trespassing upon a railroad car with intent to commit a crime, in violation of 18 U.S.C. § 1991; (3) entering a railroad car with intent to commit a theft, in violation of 18 U.S.C. § 2117; and (4) assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1).[1]

Garcia-Castillo was sentenced pursuant to the United States Sentencing Commission, Guidelines Manual ("USSG"), to twenty-four months in prison on each count, to be served concurrently, followed by three years of supervised release. He was also ordered to pay a special assessment of $250, and to pay immediately $76,594.73 in mandatory restitution, jointly and severally with codefendant Carlos Ivan Aguirre, to reimburse the U.S. Department of Labor for treatment of injuries suffered by several law enforcement agents during the commission of the crime. The district court also ordered that deportation proceedings for Garcia-Castillo, a Mexican citizen, begin during the course of his sentence.

On appeal, Garcia-Castillo argues (1) that it was improper for the district court to order restitution because the assault on the agents was outside the scope

---

[1]Count Four is for Garcia-Castillo's assault on Agent Laird Hightower, whose injuries did not require medical treatment. As explained below, this assault was not the basis for any part of the restitution order at issue on appeal.

of the train-robbery conspiracy and because the restitution order violated the recent Supreme Court decision, Blakely v. Washington, 124 S. Ct. 2531 (2004);[2] and (2) even if the restitution order was proper, the district court violated the express requirements of the applicable restitution statute by failing to take into account his financial condition when ordering the entire restitution amount due immediately. We affirm in part, vacate in part, and remand for further consideration consistent with this order and judgment.

## BACKGROUND

Garcia-Castillo was arrested September 12, 2002, with twelve others[3] after he boarded a Union Pacific train near the United States-Mexico border in an attempt to steal the train's cargo. The train was stopped on the siding in the Sunland Park, New Mexico, area while loaded with electronics, toys, fireworks, and canned goods that were being transported from Long Beach, California, to Dallas, Texas. Because theft from cargo trains was an increasing problem, agents from both countries were conducting a sting operation that day and were stationed

---

[2]When the defendant raised Blakely before this court, the Supreme Court had not yet issued United States v. Booker, 125 S. Ct. 738 (2005). However, raising Blakely was sufficient to invoke Booker as well. Accordingly, even though Garcia-Castillo did not address the application of Booker to this case, we apply both cases and hereinafter refer to them collectively as Blakely/Booker.

[3]The charges against most of these individuals were dismissed for lack of evidence.

in the cars of the train and in the surrounding area. As the train rested, agents inside the train heard male voices speaking in Spanish outside the train. Garcia-Castillo then appeared on top of a railroad car and entered it. Several agents were waiting in that car and Garcia-Castillo was taken into custody and handcuffed. Agents found in his possession a piece of wire and a lighter, materials that are used to "shunt," or stop, trains.

Outside the train, Agents Samantha Mikeska and Sergio Barrio were attempting to capture and arrest Eduardo Calderon, a/k/a "Lalo," as he fled from the train to the Mexican border. Agent Mikeska jumped on his back and the two crashed into a cyclone fence marking the border between the two countries. Calderon shouted for help and five or six men on the Mexican side of the fence tried to pull Calderon through a hole in the fence. Those men also began striking Mikeska and Barrio with their hands, fists, rocks, and bricks. The agents and Calderon were all eventually pulled through the hole, and the assault continued until another agent fired a shot that caused the group to scatter. Meanwhile, Garcia-Castillo, still in custody on the train, heard the commotion outside and attempted to escape by kicking Agent Laird Hightower in the leg, hamstring, and buttock.

Mikeska and Barrio were transported to the hospital. Mikeska suffered a fractured orbital bone on her left eye, a fractured vertebra, head trauma, and a

laceration on her forehead. Barrio suffered several fractures to his skull, resulting in seizures, dizziness, migraine headaches, and emotional problems. It is uncertain whether he will be able to return to work.

Garcia-Castillo pleaded guilty in the District of New Mexico to the charges outlined above. His plea agreement contained a "Waiver of Appeal Rights" provision, and the government sought to enforce the waiver resulting in a dismissal of this appeal by filing a Motion for Enforcement of the Plea Agreement, as required by United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004) (en banc). The language of the waiver provision was narrow and did not in any way refer to the restitution order. Applying the principles of Hahn, a panel of this court denied the motion because the restitution order was not encompassed in the waiver. The waiver provision is at best ambiguous with respect to the issue in question. However, the panel decision determined only that the appeal could go forward. It did not address, and has no bearing on, the merits of the appeal. Accordingly, we now address the merits of the issues outlined above.

## DISCUSSION

### I. Imposition of Restitution

Garcia-Castillo first argues that the district court erred by ordering restitution because he was not involved in the assault on Mikeska and Barrio and

should not be responsible for their injuries. He asserts that two conspiracies existed in this case: the conspiracy to rob the train, to which he pleaded guilty, and a separate conspiracy to aid Calderon's escape, which resulted in harm to the agents. He contends that it was not foreseeable that the train-robbery conspiracy would result in the melee at the international border which resulted in the agents' injuries. Garcia-Castillo also argues that the restitution was imposed in violation of <u>Blakely</u>/<u>Booker</u> because a jury did not make the factual findings underlying the restitution order. We reject these arguments on multiple grounds.

**A.**

We first turn to Garcia-Castillo's argument that the agents' injuries were not within the scope of the train-robbery conspiracy and were not foreseeable. "We review the legality of a restitution order de novo." <u>United States v. Nichols</u>, 169 F.3d 1255, 1278 (10th Cir. 1999). "Factual findings underlying a restitution order are reviewed for clear error and the amount of restitution for an abuse of discretion." <u>Id.</u>

Federal courts may order restitution only as "explicitly empowered by statute." <u>Id.</u> at 1278 (internal quotation omitted). The Victim and Witness Protection Act ("VWPA") provides that a court may order restitution to any victim of an offense. 18 U.S.C. § 3663(a)(1)(A). The Mandatory Victims

Restitution Act ("MVRA"), which amended the VWPA in 1996 and under which the restitution was ordered in this case, defines "victim" as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

Id. at § 3663A(2). The MVRA requires restitution for victims of violent crimes. Id. at § 3663A(c)(1). The parties do not dispute that conspiracy to rob a train is a violent crime under the MVRA.

A restitution award under these statutes is authorized only for losses caused by the conduct underlying the conviction. United States v. Brewer, 983 F.2d 181, 183-84 (10th Cir. 1993) (citing Hughey v. United States, 495 U.S. 411, 420 (1990)). Nonetheless, "[a] conspiracy participant is legally liable for all reasonably foreseeable acts of his or her coconspirators in furtherance of the conspiracy." Id. at 185. See also United States v. Osborne, 332 F.3d 1307, 1314 (10th Cir. 2003) ("The losses caused by the entire conspiracy, not just the losses caused by those acts committed by the defendant, can be attributed to the defendant when the court orders restitution." (internal quotation omitted)); Nichols, 169 F.3d at 1278 ("[A] criminal defendant who participates in a conspiracy is liable in restitution for all losses flowing from that conspiracy.") (internal quotation omitted).

In this case, the district court implicitly found that Garcia-Castillo was responsible for the agents' harm:

> THE COURT: Do you take any position on this [issue of restitution], Mr. Harwood?
>
> MR. HARWOOD [Garcia-Castillo's counsel]: Yes, Your Honor. I fear we may be dealing with a theoretical issue because Mr. Garcia has absolutely no ability to pay any restitution, but for the Court to order restitution, I think the Court needs to find that the injuries suffered by the agents were somehow causally connected to Mr. Garcia-Castillo, and that's simply not the case from the uncontested facts in the presentence report.
> He pled guilty to a conspiracy to burglarize a train. . . . At the time these other unknown individuals, who may or may not have even been part of this train burglary conspiracy, injured the other two agents, Mr. Garcia was on the ground in custody in handcuffs.
> It's not a foreseeable result of a train burglary. Nobody was armed . . . when they started the burglary, and we don't even know if the people who ended up injuring these agents were part of the conspiracy or just other people in the area, so I don't think it would be appropriate, Your Honor.
>
> THE COURT: *I find and conclude that the Mandatory Restitution Act requires me to impose restitution*, and therefore, part of this Judgment and Commitment will require that the defendant make restitution to the United States Department of Labor . . . in the amount of $75,594.73 [sic].

Tr. of Sentencing Hr'g at 10-11, R. Vol. IV (emphasis added). Because the district court allowed defense counsel to expound on the issue, and immediately thereafter ordered the full amount of restitution, it is apparent that the court found that the agents' injuries flowed from the conspiracy to rob the train.

The record supports that finding. The conduct underlying the conspiracy conviction was Garcia-Castillo's agreement with Calderon and others to steal merchandise from the train. It is foreseeable that during a criminal act such as this, law enforcement agents could confront and seek to apprehend the thieves, and that bodily harm could result from the encounter, whether during an attempted escape across the border or otherwise. The conspiracy was the direct cause of the agents' injuries. We therefore hold that the harm inflicted on Mikeska and Barrio was in the course of the conspiracy to which Garcia-Castillo pleaded guilty, and the restitution order was, therefore, required by statute.

**B.**

We now consider Garcia-Castillo's contention that the restitution order violated Blakely/Booker, because: (1) the judge, rather than a jury, found the facts underlying the restitution order, and (2) the judge did so under a preponderance of evidence standard, in accordance with 18 U.S.C. § 3664(e), rather than under a beyond a reasonable doubt standard. Garcia-Castillo contends that only a jury could have made the factual findings supporting the restitution order as to "the scope of the conspiracy that Mr. Garcia-Castillo joined, whether the melee involving the two injured agents was in furtherance of that conspiracy,

-9-

whether the injuries to those agents were foreseeable to Mr. Garcia-Castillo, and the amount of restitution due for those injuries." Appellant's Supp. Br. at 8.

In <u>Blakely</u>, the Supreme Court reiterated the holding of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" <u>Blakely</u>, 124 S. Ct. at 2536 (quoting <u>Apprendi</u>, 530 U.S. at 490). In applying this holding to Washington state's determinate sentencing scheme, <u>Blakely</u> clarified that the "statutory maximum" is "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." <u>Id.</u> at 2537. Recently, <u>Booker</u> applied <u>Blakely</u> to the federal sentencing guidelines, rendering them advisory rather than mandatory. <u>Booker</u> held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Booker</u>, 125 S. Ct. at 756. For any one of three independent reasons, we reject Garcia-Castillo's <u>Blakely</u>/<u>Booker</u> argument.

1. <u>Restitution is not punishment</u>

<u>Blakely</u>/<u>Booker</u> apply only to judicial fact-finding that increases a *criminal punishment* in violation of the Sixth Amendment. <u>Blakely</u>, 124 S. Ct. at 2536 (applying its rule to "any fact that increases the *penalty for a crime* beyond the prescribed statutory maximum must be submitted to a jury" (emphasis added)). Restitution ordered under the VWPA and MVRA, however, is not criminal punishment. "'[T]he VWPA's purpose is *not to punish defendants* or to provide a windfall for crime victims, but to ensure that victims, to the greatest extent possible, are made whole for their losses.'" <u>Nichols</u>, 169 F.3d at 1279 (quoting <u>United States v. Arutunoff</u>, 1 F.3d 1112, 1121 (10th Cir. 1993)) (emphasis added). <u>See also</u> <u>United States v. Hampshire</u>, 95 F.3d 999, 1006 (10th Cir. 1996) ("[T]he VWPA seeks to *compensate victims rather than punish defendants*." (emphasis added)). Although the question in <u>Nichols</u> was whether restitution was criminal punishment barring ex post facto application of the law, 169 F.3d at 1279-80, the principle does not change simply because we are examining the issue in a Sixth Amendment context.

We acknowledge that this reasoning is somewhat in tension with our recent case <u>United States v. Wooten</u>, 377 F.3d 1134, 1144 & n.1 (10th Cir.), <u>cert. denied</u>, 125 S. Ct. 510 (2004), which held that <u>Apprendi</u> and <u>Blakely</u> did not apply to a restitution order because the amount ordered did not exceed any

prescribed statutory maximum. <u>Wooten</u>, 377 F.3d at 1144 & n.1. <u>Wooten</u> noted in dicta that "courts commonly regard . . . restitution orders as criminal penalties," but concluded <u>Apprendi</u> still did not apply because the defendant never contended that the restitution order exceeded the amount of the victim's harm, or the statutory maximum under the MVRA. <u>Id.</u> at 1144-45; 18 U.S.C. § 3663A(b).

<u>Wooten</u>, however, did not explain its divergence in dicta from our controlling precedent in <u>Nichols</u>, <u>Hampshire</u>, and <u>Arutunoff</u> holding that restitution is not punishment. And, it is a well-established rule in this circuit that an earlier decision that has not been overturned en banc or by express supervening Supreme Court authority, takes precedence over a later, conflicting decision. <u>See</u> <u>United States v. Prentiss</u>, 206 F.3d 960, 965 n.2 (10th Cir. 2000) ("[T]o the extent that a more recent panel decision conflicts with . . . prior Tenth Circuit authority, we are bound by the earlier case."). We therefore adhere to the holding that

restitution is not criminal punishment.[4]  Blakely/Booker therefore do not apply to the restitution order.

2.    Garcia-Castillo admitted the facts underlying the restitution order

Alternatively, and assuming *arguendo* that restitution is criminal punishment subject to Blakely/Booker, the Sixth Amendment is still not implicated because Blakely/Booker do not apply to sentences based on facts which have been admitted by the defendant or found by a jury.  Blakely, 124 S. Ct. at 2537; Booker, 125 S. Ct. at 756.  By entering into the plea agreement,

_____

[4]Whether restitution is criminal punishment and whether restitution is subject to Apprendi, Blakely, and Booker are by no means settled questions in courts across the country.  Compare United States v. Behrman, 235 F.3d 1049, 1054 (7th Cir. 2000) (Apprendi does not apply to restitution because it is not criminal punishment but rather a "classic civil remedy," and, alternatively, MVRA does not have a statutory maximum); United States v. Szarwark, 168 F.3d 993, 998 (7th Cir. 1999) (restitution ordered under the MVRA is not criminal punishment); United States v. Wilson, __ F. Supp. 2d. __, No. 2:03-CR-00882-PGC, 2005 WL 78552, at *16-18 (D. Utah Jan. 13, 2005) (historical precedents compel conclusion that restitution is not criminal punishment, and Booker addressed constitutionality of sentencing guidelines, not the MVRA); United States v. Visinaiz, 344 F. Supp. 2d 1310, 1318-26 (D. Utah 2004) (discussing extensively reasons why restitution is not criminal punishment); and United States v. Einstman, 325 F. Supp. 2d 373, 382 (S.D.N.Y. 2004) (stating uncertainty about whether restitution is criminal punishment but nonetheless concluding that Congress intended judge, not jury, to order restitution); with United States v. Ross, 279 F.3d 600, 609 (8th Cir. 2002) (restitution is a criminal penalty); United States v. Bearden, 274 F.3d 1031, 1042 n.4 (6th Cir. 2001) (stating Seventh Circuit's decision in Behrman at odds with case law in other circuits holding that restitution is punishment); and United States v. Williams, 128 F.3d 1239, 1241 (8th Cir 1997) (restitution is a criminal penalty).

-13-

Garcia-Castillo admitted the facts underlying the restitution order, namely, that the agents' injuries were caused by the conspiracy.

In the plea agreement, Garcia-Castillo waived his right to "have a trial by jury" and agreed to "plead guilty to a four-count Superseding Indictment" charging him with the counts described above. Plea Agreement at 1, 2, R. Vol. I, doc. 137. The plea agreement also informed Garcia-Castillo that a guilty plea to the conspiracy charge would subject him to "restitution as may be ordered by the Court, including, if applicable, mandatory restitution under 18 U.S.C. § 3663A." Id. at 3. Moreover, the indictment contained the following description of the assault on the agents as an overt act in furtherance of the train-robbery conspiracy:

> On September 12, 2002, after being observed by law enforcement officers, several of Defendant Garcia-Castillo's unindicted co-conspirators fled from the area near the train. Several of these, and other unindicted co-conspirators, threw bricks, rocks, and sticks at FBI Special Agent Samantha Mikeska and FBI Special Agent Sergio Barrio in an effort to help another unidentified co-conspirator escape from FBI Special Agent Samantha Mikeska.

Superseding Indictment at 4, R. Vol. I, doc. 139. Garcia-Castillo's counsel for the first time objected to this overt act at the plea hearing and again at the sentencing hearing; but at no time did he ask that the overt act be stricken from the indictment, and he never sought to modify or void the plea agreement and go to trial. The fact is that Garcia-Castillo entered into the plea bargain

-14-

unconditionally and is bound by its terms and what it encompasses. A defendant who pleads guilty admits to all of the factual allegations contained in the indictment, including overt acts in furtherance of a conspiracy, and the legal consequences of those acts. United States v. Wilks, 58 F.3d 1518, 1523 (10th Cir. 1995); Spencer v. Hunter, 139 F.2d 828, 829 (10th Cir. 1944). See also United States v. Brown, 164 F.3d 518, 521 (10th Cir. 1998) ("An unconditional plea of guilty is an admission of all material facts alleged in the charge."); United States v. Powell, 159 F.3d 500, 503 (10th Cir. 1998) (same). Therefore, Garcia-Castillo admitted that the conspiracy to which he pleaded guilty encompassed the agents' injuries, and the Sixth Amendment is not implicated by the restitution order.

3. Alternatively, the district court did not commit plain error when it ordered restitution

As further alternative argument, assuming *arguendo* that restitution is criminal punishment, that Blakely/Booker apply, and that Garcia-Castillo did not admit the facts underlying the restitution order, we review this claim for plain error. The defendant raised this issue for the first time in a Supplemental Brief in this court. He did not present it below.[5] Booker, 125 S. Ct. at 769 ("[W]e expect

---

[5]We decline Garcia-Castillo's invitation to apply the "supervening-decision" doctrine of Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1231 (10th Cir. 1996), to the Blakely/Booker issue in this case.

reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."); United States v. Maldonado-Ramires, 384 F.3d 1228, 1230 n.1 (10th Cir. 2004); United States v. Sanchez-Cruz, 392 F.3d 1196, 1201 (10th Cir. 2004).

Reversal under the plain error standard requires (1) an error, (2) that is plain, and that (3) affects substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993). The burden is on the defendant to demonstrate that the error affected his substantial rights. United States v. Vonn, 535 U.S. 55, 63 (2002). If these three conditions are met, the reviewing court may in its discretion correct the error if the error (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732 (internal quotation marks omitted).

In the unique circumstances of this case, we need not examine the third and fourth prongs of the plain-error test because we conclude that even if, *arguendo*, there was error, it certainly was not plain, as the foregoing discussion indicates. For an error to be "plain," it must be "clear or obvious" and "contrary to well-settled law." United States v. McSwain, 197 F.3d 472, 481 (10th Cir. 1999). As noted above, there is a lack of uniformity in the law of this circuit, and of our sister circuits, on whether restitution is criminal punishment and therefore subject to the Sixth Amendment principles announced in Apprendi, Blakely, and Booker.

See supra n. 4.  There is one point of commonality, however:  our research failed to yield a single case in which an order of restitution was reversed under Apprendi, Blakely, or Booker.  We did find one recent case in which this circuit reversed and remanded because the district court *failed* to order mandatory restitution under the MVRA.  United States v. Barton, 366 F.3d 1160, 1167 (10th Cir. 2004).  Therefore, because it is far from "clear" or "well-settled" whether and how restitution implicates the Sixth Amendment, there was no plain error.

## II.  Manner of Payment

Garcia-Castillo next contends that even if the restitution order was proper, the district court erred by requiring the full amount, plus interest and penalties, to be due immediately without considering his financial condition.  Garcia-Castillo's attorney did not raise this issue below.[6]  We therefore review for plain error.

The MVRA states:

> In each order of restitution, the court *shall* order restitution to each victim in the full amount of each victim's losses as determined by the court and *without consideration of the economic circumstances of the defendant.*

---

[6]As noted above, Garcia-Castillo's attorney did make reference to his client's financial situation at the sentencing hearing when he stated:  "I fear we may be dealing with a theoretical issue because Mr. Garcia has absolutely no ability to pay any restitution . . . ."  Tr. of Sentencing Hr'g at 10, R. Vol. IV.  However, this statement is not specific enough to be construed as raising the manner-of-payment issue.

. . .

Upon determination of the amount of restitution owed to each victim, the court *shall*, pursuant to section 3572, *specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid*, in consideration of—

> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant; including obligations to dependents.

A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.

A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of the restitution order in the foreseeable future under any reasonable schedule of payments.

18 U.S.C. § 3664(f)(1)-(3) (emphasis added).  A district court is therefore to disregard a defendant's financial condition when determining the *amount* of restitution to be paid, but it is to consider a defendant's financial condition when determining the *manner* in which the restitution should be paid, whether in accordance with a schedule, by nominal payment, or in a lump sum.[7]  United

---

[7]Under the VWPA, in contrast with the MVRA, a district court is required to consider the financial resources of the defendant and the defendant's future earning capacity in deciding even whether to order restitution.  See United States v. Haddock, 50 F.3d 835, 837-38 (10th Cir. 1995).

States v. Coates, 178 F.3d 681, 683-84 (3d Cir. 1999); United States v. Myers, 198 F.3d 160, 168-69 (5th Cir. 1999).

The presentence report noted that Garcia-Castillo had no income or assets and only a grade-school education. As conceded by government counsel at oral argument, the district court violated the statute by ordering the full amount of restitution due immediately without contemplating the defendant's ability to pay, a payment schedule, or nominal payments. Coates, 178 F.3d at 684; Myers, 198 F.3d at 169. We therefore vacate the portion of the restitution order that directs immediate full payment and remand to the district court to consider an appropriate manner of payment.

## CONCLUSION

Garcia-Castillo's restitution order is AFFIRMED, except for the requirement that he pay the full amount of restitution immediately, which is VACATED and REMANDED to the district court for consideration of Garcia-Castillo's financial circumstances in determining the manner in which payment shall be made.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge