# IN THE SUPREME COURT OF IOWA

No. 20–0950

Submitted October 21, 2021—Filed April 15, 2022

**STATE OF IOWA,**

Appellee,

vs.

**CAESAR CHARLES DAVISON,**

Appellant.

Appeal from the Iowa District Court for Des Moines County, John M. Wright, Judge.

A defendant convicted of assault causing serious injury and conspiracy to commit a forcible felony (murder) appeals the award of $150,000 restitution and the sentence. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which Appel, McDonald, and Oxley, JJ., joined, and in which McDermott, J., joined, except as to the discussion of legislative history in part III.A. McDonald, J., filed a concurring opinion, in which Oxley, J., joined. McDermott, J., filed a special concurrence. Waterman, J., filed an opinion concurring in part and dissenting in part, in which Christensen, C.J., joined.

Martha Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, and Lucee Laursen (argued), law student, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout (argued), Assistant Attorney General, for appellee.

**MANSFIELD, Justice.**

A jury found the defendant guilty of assault causing serious injury and conspiracy to commit murder in connection with a shooting death. The district court later awarded restitution against the defendant under Iowa Code section 910.3B (2017). That law mandates an award of at least $150,000 restitution when "the offender is convicted of a felony in which the act or acts committed by the offender caused the death of another person." *Id.* § 910.3B(1). The defendant now argues that the restitution was statutorily and constitutionally impermissible because the offenses of which he was convicted did not include, as an element, causing the death of another person.

We conclude that Iowa Code section 910.3B does not require a jury finding that the defendant caused the death of another person. But the Sixth Amendment to the United States Constitution is a different matter. The United States Supreme Court has repeatedly held that the Sixth Amendment requires facts that increase the defendant's minimum or maximum punishment to be determined by a jury. Because the $150,000 restitution is punitive in part, awards of such restitution must be based on jury findings. No jury found that the defendant caused the death of the victim of the shooting. Therefore, we reverse the award of restitution in this case and remand for further proceedings.

**I. Facts and Procedural History.**

Early in the morning of September 10, 2017, Demarcus Chew rode back with a group of friends from a club in Gulfport, Illinois to his home in Burlington, Iowa. Another group had been at the same club. Members of that other group,

which included the defendant Caesar Davison, Emmanuel Spann, Antoine Spann, Andre Harris, and Derrick Parker, also left at the same time. The second group was aware that an individual named A.J. Smith had a conflict with the Chew family and had put a bounty on Demarcus Chew's head.

When the car carrying Chew home neared Chew's apartment, a vehicle carrying most of the members of the second group also stopped. Davison and Emmanuel Spann got out of that vehicle, leaving Antoine Spann and Harris behind.[1]

Davison and Emmanuel Spann were out of the vehicle for only seconds or, at most, a couple of minutes. During that time, multiple gunshots were fired. Chew was struck seven times by bullets, once in the head, three times in the chest or abdomen, once in the pelvis, once in the left arm, and once in the left leg. Chew's head wound was "rapidly fatal," according to the medical examiner, but the wounds to Chew's lungs and liver would also have resulted in Chew's death by themselves.

Davison and Emmanuel Spann returned quickly to their vehicle. Antoine Spann was told "to go." When Davison and Emmanuel Spann were asked if they got Chew, Davison responded, "Yeah, it was up close." Davison was also heard saying, "He gone." As Antoine Spann drove away, Emmanuel Spann was seated in the vehicle holding the murder weapon wrapped in a T-shirt. The vehicle made another brief stop so Emmanuel could get out and hide the gun in some bushes.

---

[1]Both Antoine Spann and Harris made plea agreements that avoided murder charges but required them to testify for the State.

On April 2, 2019, the State filed a trial information in the Iowa District Court for Des Moines County charging Davison with first-degree murder, in violation of Iowa Code sections 707.1 and 707.2(1), and conspiracy to commit a forcible felony, murder, in violation of Iowa Code sections 706.1 and 706.3.

The case was heard by a jury beginning on February 11, 2020. On February 20, the jury returned verdicts finding Davison guilty of the lesser included offense of assault causing serious injury, a class "D" felony, in violation of Iowa Code section 708.2(4), and guilty as charged of conspiracy to commit a forcible felony, murder, a class "C" felony.

The jury instruction for assault causing serious injury read as follows:

> The State must prove all of the following elements of the lesser-included offense of Assault Causing a Serious Injury:
>
> 1. On or about September 10, 2017, the defendant committed an assault upon Demarcus Chew.
>
> 2. The defendant had the apparent ability to do the act.
>
> 3. The defendant's act caused a serious injury to Demarcus Chew.

The instruction for conspiracy to commit a forcible felony read:

> As to Count II of the Trial Information, the State must prove all of the following elements of Conspiracy to Commit a Forcible Felony:
>
> 1. On or about the 10th day of September, 2017, Caesar Davison agreed with Antoine Spann, Andre Harris, Emmanuel Spann, and Derrick Parker that one or more of them would commit the crime of Murder, a forcible felony, or solicit another to commit the crime of Murder; or attempt to commit the crime of Murder.
>
> 2. Caesar Davison entered into the agreement with the intent to promote or facilitate the crime of Murder.

3. Caesar Davison, or Antoine Spann, Andre Harris, Emmanuel Spann, or Derrick Parker committed an overt act in furtherance of the agreement.

Significantly, neither of those crimes—unlike the murder and lesser-included manslaughter offenses of which Davison was acquitted—required the jury to find that Davison had caused Chew's death.

On March 12, the State filed a statement of pecuniary damages requesting an award of $150,000 restitution for the benefit of the Chew's estate because Davison had "caused the death of another person." Iowa Code § 910.3B(1). The next day, Davison lodged an objection based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Southern Union Co. v. United States*, 567 U.S. 343 (2012). On July 13, the district court imposed consecutive prison sentences on Davison totaling fifteen years and ordered him to pay $150,000 in restitution to Chew's family under Iowa Code section 910.3B(1).

Davison appeals his restitution award and sentence. He argues that section 910.3B does not authorize a restitution award unless causing the death of another is an element of an offense for which the defendant was convicted. Alternatively, Davison argues that the Sixth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution require a jury finding beyond a reasonable doubt that he caused the death of another. Finally, Davison claims the district court abused its discretion at sentencing because it was not aware it could sentence him to probation.

We retained Davison's appeal.

## II. Standard of Review.

This court reviews restitution orders for correction of errors at law. *State v. Waigand*, 953 N.W.2d 689, 694 (Iowa 2021). However, our review is de novo when a constitutional claim is at issue. *State v. Izzolena*, 609 N.W.2d 541, 545 (Iowa 2000) (en banc). We review the district court's sentence for abuse of discretion. *State v. Crooks*, 911 N.W.2d 153, 161 (Iowa 2018).

## III. Legal Analysis.

**A. Does Iowa Code Section 910.3B(1) Apply Only to Defendants Convicted of a Crime in Which an Element Was Causing the Death of Another?** Iowa Code section 910.3B(1) states:

> In all criminal cases in which the offender is convicted of a felony in which the act or acts committed by the offender caused the death of another person, in addition to the amount determined to be payable and ordered to be paid to a victim for pecuniary damages, as defined under section 910.1, and determined under section 910.3, the court shall also order the offender to pay at least one hundred fifty thousand dollars in restitution to the victim's estate if the victim died testate.

The first issue Davison raises is one of statutory interpretation—does the phrase "a felony in which the act or acts . . . caused the death of another person" mean that the death-causing acts have to be part of the definition of the felony itself or is it sufficient if the defendant is convicted of a felony and the acts that constituted the felony *also* caused a death? *Id.* The defendant argues that the correct interpretation requires causing a death to be an element of the felony.[2]

---

[2]The State does not dispute that causing a death is not a required element of either offense of which Davison was convicted. *See* Iowa Code §§ 706.1, .3 (listing the elements of conspiracy to commit a forcible felony); *id.* §§ 708.1(2), .2(4) (listing the elements of assault causing serious injury).

Our first step in a case of statutory interpretation "is to determine whether the language is ambiguous." *State v. Richardson*, 890 N.W.2d 609, 616 (Iowa 2017). To determine if a statute is ambiguous, we consider its language in context and consider whether "reasonable minds differ or are uncertain as to the meaning of the statute." *Id.* (quoting *Rhoades v. State*, 880 N.W.2d 431, 446 (Iowa 2016)). In our view, the plain text of section 910.3B leaves room for reasonable minds to differ, providing two explicit requirements but limited guidance as to how closely they must connect. It is clear that the statute is intended to apply to defendants convicted of a felony where a felonious act resulted in the death of another, but less clear whether an act causing death must be part of the felony.

The legislature could have avoided this issue with clearer language. For example, the general rule for restitution is that the victim is entitled to pecuniary damages they "could recover against the offender in a civil action arising out of the same facts or event." Iowa Code § 910.1(6). Iowa Code section 910.3B(1) does not track that broad causation standard. On the other hand, the legislature didn't choose to say, "In all criminal cases in which the offender is convicted of a felony *an element of which is causing the death of another person* . . . ." That word choice would have mandated that we follow the narrower of the two interpretations at issue here.

While the text leaves room for reasonable debate, we think it tends to favor the broader interpretation. The statute uses the past tense, "caused," rather than the present tense, "cause." The present tense would have conveyed that the

attributes of the felony are determinative. In other words, does this felony involve causing the death of another person? The past tense suggests that the acts in the specific case matter—i.e., did this defendant's felonious acts cause the death of another person?

We note that the rule of lenity can come into play when interpreting criminal statutes. Recently, though, in *State v. Shears*, we seemed to question whether the rule of lenity applied to victim restitution:

> We have stated that because criminal restitution is penal in nature, the provisions of Iowa Code chapter 910 should be interpreted strictly. *See* [*State v. Bonstetter*, 637 N.W.2d 161, 166 (Iowa 2001)]. We have also stated in passing that the rule of lenity is applicable to criminal restitution. *See State v. Hagen*, 840 N.W.2d 140, 146 (Iowa 2013). Yet, we have suggested that it is appropriate to consider a broader interpretation of restitution provisions because the purpose of the statute is to protect the public. *See* [*State v. Kluesner*, 389 N.W.2d 370, 372–73 (Iowa 1986)]. We have thus held, for example, that the amount of restitution ordered is not limited by the parameters of the offense for which the defendant enters a guilty plea. *See* [*State v. Watts*, 587 N.W.2d 750, 751 (Iowa 1998)].

920 N.W.2d 527, 533 (Iowa 2018). We need not resolve today whether the rule of lenity applies to awards of restitution to crime victims. We have said that the rule of lenity is a "last resort." *In re Prop. Seized from Bo Li*, 911 N.W.2d 423, 429 n.4 (Iowa 2018). It "applies only when a reasonable doubt persists *after* the traditional canons of interpretation have been considered." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 197 (2012). For the reasons we discuss herein, we believe Iowa Code section 910.3B can be interpreted without touching upon the question of whether the rule of lenity applies to criminal victim restitution.

Iowa Code section 910.3B became law in 1997. 1997 Iowa Acts ch. 125, § 11. In 2000, we decided several cases involving that section. *State v. Rohm*, 609 N.W.2d 504 (Iowa 2000) (en banc); *State v. Klawonn*, 609 N.W.2d 515 (Iowa 2000) (en banc); *State v. Artzer*, 609 N.W.2d 526 (Iowa 2000) (en banc); *Izzolena*, 609 N.W.2d 541. None of the four cases directly presented the question of interpretation we must answer today. Yet some language in *State v. Izzolena* supports the broader interpretation that the State urges here. In *Izzolena*, this court considered section 910.3B as it applied to a defendant convicted of unintentionally causing the death of another by operating a motor vehicle in a reckless manner. 609 N.W.2d at 545. The district court imposed victim restitution under section 910.3B of $150,000. *Id.* On appeal, the defendant argued that the restitution award was unconstitutional because it was an excessive fine, a violation of due process, and a violation of double jeopardy. *Id.* at 546–47.

In rejecting these claims, we observed in *Izzolena* that the statute "only applies to offenders who committed a crime which caused the death of another human." *Id.* at 550. We also remarked that "[the defendant's] actions resulted in the death of [the victim]." *Id.* at 552. Additionally, we noted that "the commission of the offense must have been the proximate cause of the victim's death." *Id.* at 553. Our choice of words in *Izzolena* indicates that Iowa Code section 910.3B would be triggered by the defendant's felonious acts, not necessarily by the elements of the crime. The defendant's actions, i.e., his or her commission of the

offense, must *cause* the death of another, but causing the death of another doesn't have to be part of the crime itself.

Also, the legislative history of Iowa Code section 910.3B seemingly supports the broader interpretation. *See* Iowa Code § 4.6(3) (providing that the court may consider legislative history in interpreting an ambiguous statute). The preamble characterizes the section as "providing restitution for death of a victim of a crime." 1997 Iowa Acts ch. 125. The official bill explanation states that "[t]he bill also provides for payment of $150,000 by an offender, . . . to the estates of persons whose deaths are caused by the offender's felonious criminal acts." S.F. 503, 77th G.A., 1st Sess., explanation (Iowa 1997). Thus, in the legislature's view, the key point appears to be whether the victim died as a result of the defendant's felonious acts, not whether the elements of the crime included causing the victim's death.

For these reasons, we are not persuaded by Davison's argument that Iowa Code section 910.3B requires causing the death of another to be an element of a felony for which the defendant is convicted.

**B. Is Section 910.3B Restitution an Increase in Penalty Requiring a Jury Finding under *Apprendi v. New Jersey* and its Progeny?** Davison also argues that awarding restitution against him under section 910.3B was unconstitutional absent a jury finding beyond a reasonable doubt that he had caused the death of another. *See Apprendi*, 530 U.S. at 490.[3]

---

[3]Davison does not dispute that the district court found he had caused the death of Chew.

1. *The* Apprendi *Line of Cases.* In *Apprendi*, the United States Supreme Court held that a New Jersey statute violated the Fourteenth and Sixth Amendments because it authorized the sentencing court to enhance the defendant's prison term as a "hate crime" without a jury determination that the defendant acted with a purpose to intimidate based on the victims' race. *Id.* at 468–69, 497. The Court held that because the fact of racial animus increased the defendant's maximum penalty, it was subject to the Sixth Amendment requirement of a jury finding like any other element of a crime. *Id.* at 476–77. Under this standard, the relevant inquiry is "one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494.

Over a decade later, in *Southern Union,* the Court considered whether a statutory fine was subject to the rule in *Apprendi.* 567 U.S. at 346. A jury returned a verdict finding the defendant guilty of one count of unlawfully storing liquid mercury. *Id.* at 346–47. The criminal statute under which the defendant was convicted authorized "a fine of not more than $50,000 for each day of violation." *Id.* at 347 (quoting 42 U.S.C. § 6928(d)). The district court imposed a fine of $6 million after determining there had been a 762-day violation. *Id.* The defendant argued that because it had only been convicted of a single count, the district court could only levy the maximum fine for one day; *Apprendi*, in other words, limited fines to the maximum authorized by the jury verdict alone. *Id.* The Court agreed with the defendant's argument, expressly holding that the *Apprendi* rule applied to criminal fines. *Id.* at 360. As the Court put it, "In stating

*Apprendi*'s rule, we have never distinguished one form of punishment from another. Instead, our decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s]'—terms that each undeniably embrace fines." *Id.* at 350 (alterations in original).

*Southern Union* was followed by *Alleyne v. United States*, 570 U.S. 99 (2013). There, the defendant had been convicted of robbery and using a firearm in relation to a crime of violence, which carried a mandatory minimum of five years in prison. *Id.* at 103–04. Yet the defendant received a seven-year mandatory minimum sentence based on a district court finding that he had "brandished" a firearm. *Id.* at 104. The Supreme Court rejected such district court fact-finding. *Id.* at 108. It held that "[f]acts that increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." *Id.*

This sets the stage for Davison's argument here. We will parse Davison's argument into its components. First, the *Apprendi* rule embraces all forms of penalty or punishment including monetary fines. *See S. Union*, 567 U.S. at 360. Second, that rule requires the jury to find beyond a reasonable doubt any fact that increases the minimum or maximum penalty or punishment. *See Alleyne*, 570 U.S. at 108; *Apprendi*, 530 U.S. at 490. Third, the $150,000 restitution award is an additional penalty or punishment for committing a felony that caused the death of another. *See Izzolena*, 609 N.W.2d at 548–49. And fourth, no jury found that Davison caused Chew's death.

2. *Courts have generally declined to apply* Apprendi *to restitution because restitution is usually compensatory and indeterminate.* At first glance, Davison's argument faces a steep climb. Courts considering the matter have ruled overwhelmingly that *Apprendi* and *Southern Union* do not apply to criminal restitution. *See, e.g.*, *State v. Leon*, 381 P.3d 286, 289 (Ariz. Ct. App. 2016) ("Leon acknowledges that no court has applied *Apprendi* to restitution awards."); *State v. Arnett*, 496 P.3d 928, 933 (Kan. 2021) ("[A]t least 11 of 13 federal United States Circuit Courts of Appeal have refused to extend *Apprendi* and its progeny to orders of restitution, not to mention the many state courts which have followed suit."); *State v. Deslaurier*, 371 P.3d 505, 509 n.2 (Or. Ct. App. 2016) ("Our conclusion here is consistent with other jurisdictions that have considered whether *Southern Union* has expanded the rule of *Apprendi* to restitution."); *see also State v. Jenkins*, 788 N.W.2d 640, 643 (Iowa 2010) ("Most federal authorities reject the requirement of a jury trial for criminal restitution.").

Although the rationales behind these decisions have varied, courts have typically emphasized that restitution is both (1) compensatory and (2) an indeterminate scheme arising from the conviction itself, with no statutory maximum or minimum. *See Arnett*, 496 P.3d at 933. The decision in *United States v. Green* is illustrative. 722 F.3d 1146 (9th Cir. 2013). There, the United States Court of Appeals for the Ninth Circuit considered the constitutionality of a federal restitution award under *Apprendi* and *Southern Union*. *Id.* at 1150. The defendants argued that the crimes for which they had been convicted had no express element of a victim or a loss, and therefore these elements had to be

independently found by a jury. *Id.* The defendants equated restitution to a criminal fine that would be subject to *Apprendi* in the wake of *Southern Union.* *Id.* at 1149–50. The Ninth Circuit disagreed, noting the differences between a criminal fine and restitution. *Id.* at 1150–51. First, restitution has compensatory purposes. *Id.* at 1150. Second, the federal restitution scheme at issue was "an indeterminate scheme" that had no statutory maximum. *Id.* at 1151.

One problem with relying on federal precedent here is that it primarily involves restitution under the Mandatory Victims Restitution Act (MRVA) and the Victim and Witness Protection Act (VWPA), which differ from Iowa Code section 910.3B in key respects. *See* VWPA, 18 U.S.C. § 3663; MRVA, 18 U.S.C. § 3663A. In both acts, the restitution obligation flows from the conviction itself. *See id.* §§ 3663(a), 3663A(a). Neither act sets any mandatory maximum or minimum amount of restitution to be awarded; they merely identify types of actual damages that may be recovered. *Id.* §§ 3663(b), 3663A(b). The specific amount of restitution is dependent on the court's factual findings of the victim's loss. *Id.* §§ 3663(b), 3663A(b). This includes offenses resulting in bodily injury that results in death. *Id.* §§ 3663(b)(3), 3663A(b)(3).

3. *Restitution under Iowa Code section 910.3B is punitive and determinate.* By contrast, Iowa Code section 910.3B establishes a mandatory minimum of $150,000 awardable only if the defendant's felonious acts caused the death of another person. It may be a low number for the nonmonetary loss attributable to a death of a human being, but it is a floor—and it is awarded only if certain facts are found to exist. Under normal circumstances, a victim of crime in Iowa

is limited to recovery of "pecuniary damages," which exclude "damages for pain, suffering, mental anguish, and loss of consortium." Iowa Code §§ 910.1(6), .2(1)(*a*). Only when the defendant is convicted of a felony in which their acts caused the death of another person may the minimum amount of $150,000 be recovered *in addition. See id.* § 910.3B(1).

Like other forms of restitution, the restitution authorized by Iowa Code section 910.3B provides compensation. "It serves a remedial purpose in compensating the victim's estate." *Klawonn*, 609 N.W.2d at 520.

But section 910.3B restitution is also punitive. In our 2000 decision, *Izzolena*, we detected "several punitive elements" in the statute. 609 N.W.2d at 548. Restitution under section 910.3B "is awarded in addition to separate restitution for pecuniary damages." *Id.* Also, the statute "establishes a minimum threshold amount of $150,000 for all cases, with no required proof of evidence to support damages excluded from the definition of pecuniary damages." *Id.* at 548–49. For this reason, we found that the $150,000 restitution was subject to the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and article I, section 17 of the Iowa Constitution. *Id.* at 549.

We amplified on the punitive character of section 910.3B restitution in *State v. Corwin*, decided later the same year. 616 N.W.2d 600, 601–02 (Iowa 2000) (en banc). There we held that the Ex Post Facto Clause barred an award of the $150,000 minimum restitution for conduct that predated the 1997 enactment of the statute. *Id.* at 602. We remarked that "our analysis in *Izzolena* rested on the premise that the legislative aim of section 910.3B was to enhance

the punishment for crimes resulting in death, thereby deterring such conduct in others." *Id.* We concluded that "[b]ecause section 910.3B makes more burdensome the penalty suffered by Corwin for crimes he committed before the statute was enacted, it cannot be applied to him without violating constitutional norms." *Id.*

Our court most recently examined the punitive role of section 910.3B restitution in *State v. Richardson*, 890 N.W.2d 609. Richardson had pleaded guilty to aiding and abetting second-degree murder as a juvenile and was ordered to pay $150,000 in restitution under section 910.3B. *Id.* at 612–13. She appealed the order of restitution, arguing that the court should have considered her age and related circumstances before ordering the full mandatory restitution. *Id.* at 613–14. Her statutory argument was based on what is now Iowa Code section 901.5(13), which gives the court authority to "suspend the sentence in whole or in part, including any mandatory minimum sentence" for juvenile offenders. The defendant maintained that "mandatory minimum sentence" includes restitution under section 910.3B, and therefore the sentencing court had the discretion to suspend the $150,000 restitution. *Richardson*, 890 N.W.2d at 615. The defendant also maintained that assessment of the $150,000 restitution on a juvenile offender violated the Excessive Fines Clause. *Id.* at 620.

We reiterated in *Richardson* that "a restitution award under section 910.3B is partly punitive. Therefore, depending on the context, restitution could be considered part of the 'sentence.'" *Id.* at 617. Yet we concluded it was not part

of the "mandatory minimum sentence" as that term was used by the legislature. *Id.* at 619.

We also rejected Richardson's argument that the $150,000 restitution was an unconstitutional excessive fine when assessed on a juvenile homicide offender. *Id.* at 624. Among other things, we noted that "payments on wrongful-death judgments and settlements are credited against section 910.3B restitution." *Id.* at 623. We also pointed out that "[i]n a sense, Iowa Code section 910.3B functions as an alternative to a wrongful-death action." *Id.* And we noted that "$150,000 is not extraordinary or even generous compensation for the death of a person," despite the fact that pecuniary damages can be recovered separately. *Id.* at 623 & n.10. Still, we reiterated that section 910.3B is subject to an excessive fines analysis because of its "punitive characteristics." *Id.* at 622.

Notably, in this case, the district court made clear that the $150,000 restitution award was a single award to be assessed jointly and severally against all the defendants who had been convicted in connection with Chew's death. In that respect, it resembled a civil rather than a criminal sanction.

Yet at the end of the day, restitution under Iowa Code section 910.3B is a form of punishment, as we explained in *Izzolena* and continued to acknowledge in *Corwin* and *Richardson*. The $150,000 minimum assessment occurs only upon conviction of a felony where the felonious act results in the death of the victim, and the assessment is mandatory. *See* Iowa Code § 910.3B.

As we have already noted, every criminal conviction in Iowa can result in an award of restitution. *See id.* § 910.2(1)(*a*) ("In all criminal cases in which there

is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered, the sentencing court shall order that pecuniary damages be paid by each offender to the victims of the offender's criminal activities . . . ."). But this standard restitution is limited to damages the victim could recover in a civil action, exclusive of punitive damages, pain and suffering, mental anguish, and loss of consortium. *Id.* § 910.1(6). And with this regular type of restitution, there is no predetermined minimum or maximum. The defendant is on notice that their criminal conduct, if proved in a jury trial, could lead to an indeterminate award of restitution as needed to compensate the victim for pecuniary losses.

Section 910.3B restitution is different. A criminal defendant is required to pay at least $150,000 to the decedent's estate for having "caused the death of another person." *Id.* § 910.3B(1). This additional assessment for criminally causing the death of another is not triggered by the mere fact of conviction and must be paid regardless of the attendant circumstances. For example, it must be paid even if, hypothetically, the decedent had already been dying of a painful terminal illness; the decedent had asked the defendant to assist him in taking his own life; and the decedent's spouse (and sole beneficiary of his estate) had been present and backed the wishes of the decedent. In sum, section 910.3B restitution is both determinate and a form of punishment.

4. *Applying* Apprendi *to Iowa Code Section 910.3B.* We conclude that the punitive and determinate characteristics of the $150,000 restitution bring it within the rule of *Apprendi* and its offspring. The $150,000 assessment is, at

least in constitutional terms, a fine, and "juries must determine facts that set a fine's maximum amount." *S. Union*, 567 U.S. at 356.

Some other states have restitution statutes that impose mandatory amounts of restitution for specific crimes. Under Minnesota law, those convicted of identity theft must pay each direct victim "not less than $1,000" in restitution. Minn. Stat. § 609.527(4)(b) (West, Westlaw through 2022 Reg. Sess.). The Minnesota Supreme Court has held that given the purpose to "compensate crime victims for their losses" and "the modest amount of mandatory restitution," such awards do not constitute "fines." *State v. Rey*, 905 N.W.2d 490, 496–97 (Minn. 2018). Hence, the court declined to consider *Apprendi*-type arguments as to identity theft restitution. *Id.* at 497.

Under California law, defendants convicted of a felony pay a "restitution fine" of no less than $300 and no more than $10,000. Cal. Penal Code § 1202.4(b)(1) (West, Westlaw through 2022 Reg. Sess.). Defendants convicted of a misdemeanor pay restitution fines of no less than $150 and not more than $1,000. *Id.* California courts have found that *Apprendi* and *Southern Union* do not impact the restitution fines imposed under this section. As the California Supreme Court has explained,

> [T]his mandatory restitution fine "is properly understood as part of the maximum penalty statutorily authorized by a jury's finding that the defendant is guilty of a felony." In imposing the fine, a court does not make any factual finding that increases the range of penalties to which the defendant is exposed. It simply sets a fine within the prescribed statutory range. "Its ruling therefore raises no concerns under *Apprendi*."

*People v. Chhoun*, 480 P.3d 550, 590 (Cal. 2021) (citations omitted) (first quoting *People v. Wall*, 404 P.3d 1209, 1228 (Cal. 2017); then quoting *People v. Henriquez*, 406 P.3d 748, 781 (Cal. 2017)).

Iowa Code section 910.3B differs from these laws. Unlike the $1,000 minimum authorized in Minnesota, $150,000 is not a modest amount. In fact, we have previously treated section 910.3B restitution as a form of punishment for Eighth Amendment and Ex Post Facto purposes. *See Izzolena*, 609 N.W.2d at 549; *Corwin*, 616 N.W.2d at 602. Nor is the restitution under section 910.3B simply a range of sentencing discretion that attaches to every criminal conviction, like the restitution fines available in California or the standard victim restitution available under section 910.2(1)(*a*).

One could well argue that even if Iowa Code section 910.3B did not contain a $150,000 mandatory minimum, it would still be subject to the rule in *Apprendi* because the statute imposes an otherwise unavailable type of restitution—namely, nonpecuniary damages—only on defendants whose felonious acts caused the death of another. That seemingly necessitates a jury finding that the defendant's acts caused the death of another. "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Blakely v. Washington*, 542 U.S. 296, 304 (2004) (citation omitted) (quoting 1 J. Bishop, *Criminal Procedure* § 87, at 55 (2d ed. 1872)). In any event, the existence of "a minimum threshold amount of $150,000 for all cases" helped us conclude in *Izzolena* that the award is partly punitive. 609

N.W.2d at 548–49. And, here, it clearly distinguishes this case from other cases where *Apprendi* has not been applied because the award of restitution was considered simply a form of compensation.

For these reasons, we conclude that the district court's award of $150,000 restitution in this case violated the Sixth Amendment to the United States Constitution.[4] We therefore vacate this award and remand for further proceedings consistent with this opinion. Since the parties have not briefed or argued the issue, we do not address today whether the Double Jeopardy Clause or any other source of law would prohibit the State from pleading and proving in a jury trial that the defendant caused Chew's death and therefore should pay $150,000 in restitution.

5. *Responding to the opinion concurring in part and dissenting in part.* The opinion concurring in part and dissenting in part veers off the mark in two respects. First, the opinion suggests that the jury *did* find Davison responsible for Chew's death. This suggestion is built on a mix-and-match of aiding-and-abetting law, outdated criminal law that predates the current Iowa Criminal Code, and civil tort law. The suggestion is incorrect. The State doesn't even make this suggestion, only members of this court do.

We can guess today that the verdicts may have been the product of a jury-room compromise. Still, the jury could have rationally found that Davison

---

[4]In light of this conclusion, we need not reach Davison's alternative argument that the $150,000 restitution award violated the jury trial guarantee in article I, section 9 of the Iowa Constitution. We point out that article I, section 10—not article I, section 9—is Iowa's counterpart to the Sixth Amendment. However, article I, section 9 does contain a separate jury trial guarantee, stating, "The right of trial by jury shall remain inviolate . . . ." Iowa Const. art. I, § 9.

entered into an agreement to murder Chew which included the overt act of following Chew by car to Burlington. The jury could also have found that Davison only fired nonfatal shots at Chew after both he and Emmanuel Spann got out of the car, thus supporting the assault verdict. The jury did not receive an aiding-and-abetting instruction.

The second error committed by the opinion concurring in part and dissenting in part is its admonition to "follow the wisdom of the crowd" without recognizing that we are interpreting a statute with unique characteristics. In a typical restitutionary scheme, committing any crime automatically triggers an indeterminate amount of purely compensatory restitution. So, courts have held that *Apprendi* only requires that a jury have found a crime was committed. Here, by contrast, having "caused the death of another person" (and no other circumstance) triggers a punitive award of $150,000. We hold, therefore, that *Apprendi* requires the jury to find that the defendant caused the death of another person.

We also note that the practical effects of today's decision should be relatively narrow. In each of the previous cases where we were asked to review an award of section 910.3B restitution following a jury trial, the defendant had been convicted of a homicide felony—that is, a felony where the jury had to find the defendant caused the death of another person.[5] We believe cases where the

---

[5]*See State v. Kolbet*, 638 N.W.2d 653, 655 (Iowa 2001) (homicide by vehicle); *Corwin*, 616 N.W.2d at 601 (homicide by vehicle); *Izzolena*, 609 N.W.2d at 544 (involuntary manslaughter); *Rohm*, 609 N.W.2d at 507 (involuntary manslaughter); *Artzer*, 609 N.W.2d at 528–29 (second-degree murder); *Klawonn*, 609 N.W.2d at 517 (involuntary manslaughter).

$150,000 restitution would be assessed on a defendant who was not convicted of a homicide felony are, and likely will remain, relatively rare.

Further, to assure a jury finding of causation in such cases, the State would have the option of submitting a special interrogatory to the jury. This could be analogous to the special interrogatory used today to ascertain whether an offense was sexually motivated, thus requiring the defendant to register as a sex offender. *See* Iowa Code § 692A.126(1).

**C. Did the Trial Court Abuse its Discretion by Not Considering the Possibility of Probation?** Although the briefing and oral argument in this appeal have largely focused on the question of restitution, there is one other issue we must address. Davison argues that the district court abused its sentencing discretion by not considering him for probation based on a mistaken belief that he was not eligible for probation after having been convicted of a forcible felony.

The record raises some concerns about a misunderstanding. As Davison points out, his defense counsel said near the beginning of the sentencing proceeding that "Count I [assault causing serious injury under Iowa Code section 708.2(4)] is a forcible felony, so that probation would not be an option." That statement by Davison's counsel was not correct. Assault causing serious injury is not a forcible felony. *See* Iowa Code § 702.11(2)(*f*) (excluding assault causing serious injury from the category of forcible felony).

Later, the district court may have considered the possibility of probation. During pronouncement of sentence, the court said to Davison, "You have no family in the area who can assist you if you were on probation."

Yet, still later, the district court expressed the view that Davison was not eligible for bond on appeal because he had been convicted of a forcible felony. Both the prosecutor and defense counsel agreed with that view, mistakenly. The prosecutor said that "Count I would be a forcible felony," and defense counsel concurred, "That's my understanding, Judge." Again, that was incorrect.

"A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor. . . .'" *State v. Boldon*, 954 N.W.2d 62, 73 (Iowa 2021) (quoting *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)). But when the sentencing court fails to exercise discretion because it "was unaware that it had discretion," we typically vacate and remand for resentencing. *State v. Moore*, 936 N.W.2d 436, 440 (Iowa 2019). Here the State tries to thread a needle. It acknowledges that the district court may have misunderstood whether the assault conviction was a forcible felony when bond on appeal was discussed, yet claims that the district court didn't misunderstand the situation several minutes earlier when it sentenced Davison to prison.

Although any fault lies primarily with the parties and not with the district court, prudence dictates that we should vacate Davison's prison sentence and remand for resentencing.

**IV. Conclusion.**

For the foregoing reasons, we affirm Davison's conviction. We vacate his sentence and the award of $150,000 restitution and remand for resentencing.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Appel, McDonald, and Oxley, JJ., join this opinion, and McDermott, J., joins this opinion except as to the discussion of legislative history in part III.A. McDonald, J., files a concurring opinion, in which Oxley, J., joins. McDermott, J., files an opinion concurring specially. Waterman, J., files an opinion concurring in part and dissenting in part, in which Christensen, C.J., joins.

**McDONALD, Justice (concurring).**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." In *Apprendi v. New Jersey*, the United States Supreme Court held that the Sixth Amendment right to trial by jury required the jury—and not the sentencing judge—to find "any fact," except the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum." 530 U.S. 466, 490 (2000). In *Blakely v. Washington*, the Court clarified that the "statutory maximum" within the meaning of *Apprendi* is the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. 296, 303 (2004). "Thus, while judges may exercise discretion in sentencing, they may not 'inflic[t] punishment that the jury's verdict alone does not allow.' " *S. Union Co. v. United States*, 567 U.S. 343, 348 (2012) (alteration in original) (quoting *Blakely*, 542 U.S. at 304). In *Southern Union Co. v. United States*, the Court extended *Apprendi* and held "that the rule of *Apprendi* applies to the imposition of criminal fines." *Id.* at 360.

The threshold question in this case is whether Iowa Code section 910.3B (2017) is a penalty for a crime within the meaning of the Supreme Court's *Apprendi* jurisprudence. *See United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000) (stating that in determining whether *Apprendi* applies "the first question is whether restitution is a 'penalty for a crime' "). Our precedents dictate

the answer to that question. In *State v. Izzolena*, we stated the financial penalty imposed pursuant to "section 910.3B . . . serves other purposes normally associated with punishment such as retribution and deterrence" and is a "fine" subject to "the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution." 609 N.W.2d 541, 549 (Iowa 2000) (en banc). In *State v. Corwin*, we stated "the legislative aim of section 910.3B was to enhance the punishment for crimes resulting in death" and held the Ex Post Facto Clauses of the Federal and State Constitutions prohibited the retroactive imposition of the statutory punishment. 616 N.W.2d 600, 602 (Iowa 2000) (en banc). In *State v. Richardson*, we reiterated that section 901.3B has several punitive elements and is subject to the excessive fines clause of the Iowa Constitution. 890 N.W.2d 609, 621–22 (Iowa 2017). This court's repeated conclusion that section 910.3B imposes a criminal punishment or fine subject to the Excessive Fines and Ex Post Facto Clauses is controlling here, and I see no reason why section 910.3B should be deemed a criminal punishment for those purposes and not for the purposes of the right to trial by jury. *See Oregon v. Ice*, 555 U.S. 160, 173 (2009) (Scalia, J., dissenting) (stating *Apprendi* and related cases reject "artificial limitations upon the facts subject to the jury-trial guarantee" and "the guarantee turns upon the penal consequences attached to the fact").

The opinion concurring in part and dissenting in part argues that *Apprendi* should not be extended to restitution awards, but this merely begs the question. It is not disputed that courts almost uniformly have held that *Apprendi* does not

apply to restitution awards. *See, e.g.*, *United States v. Flynn*, 969 F.3d 873, 881–82 (8th Cir. 2020); *United States v. Green*, 722 F.3d 1146, 1151 (9th Cir. 2013); *United States v. Milkiewicz*, 470 F.3d 390, 404 (1st Cir. 2006); *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005); *but see Hester v. United States*, 139 S. Ct. 509, 509–11 (2019) (Gorsuch, J., dissenting from the denial of certiorari) ("[J]ust as a jury must find any facts necessary to authorize a steeper prison sentence or fine, it would seem to follow that a jury must find any facts necessary to support a (nonzero) restitution order."); *Green*, 722 F.3d at 1151 ("Our precedents are clear that *Apprendi* doesn't apply to restitution, but that doesn't mean our caselaw's well-harmonized with *Southern Union*. Had *Southern Union* come down before our cases, those cases might have come out differently."). And the court's opinion in this case says nothing different. The question in this case is not, as the dissenting opinion frames it, whether *Apprendi* should be extended to restitution awards. Instead, the question is whether section 910.3B is merely a restitution award or whether it also amounts to criminal punishment. The dissent assumes the former, but our precedents dictate the latter.

The dissenting opinion also concludes *Apprendi* is not applicable here because section 910.3B prescribes a specific fine and thus does not "increase" the defendant's " 'statutory maximum' (or minimum) sentence." (Quoting *Apprendi*, 530 U.S. at 490.) In my view, this argument misapprehends the Court's *Apprendi* jurisprudence. Crime and punishment is wholly a creature of statute. *See State v. Crawford*, \_\_\_ N.W.2d \_\_\_, \_\_\_, 2022 WL 815299, at *5 (Iowa Mar. 18, 2022). Crimes are defined by statute, and the district court can impose

a sentence only when authorized by statute. *See State v. Manser*, 626 N.W.2d 872, 874 (Iowa Ct. App. 2001) (noting the court's power to punish a defendant only extends as far as the Iowa Code authorizes). *Apprendi* requires that the facts authorizing the imposition of a statutory sentence be found by a jury and reflected in the jury's verdict. 530 U.S. at 490. It is immaterial whether the punishment is a maximum, a minimum, range-bound, or wholly discretionary. "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Blakely*, 542 U.S. at 304 (citation omitted) (quoting 1 J. Bishop, *Criminal Procedure* § 87, at 55 (2d ed. 1872)).

*Apprendi* ensures "that the judge's authority to sentence derives wholly from the jury's verdict. Without that restriction, the jury would not exercise the control that the Framers intended." *Id.* at 306. Justice Scalia, writing for the Court, provided an example of how *Apprendi* applies and the type of absurd result *Apprendi* prohibits:

> Those who would reject Apprendi are resigned to one of two alternatives. The first is that the jury need only find whatever facts the legislature chooses to label elements of the crime, and that those it labels sentencing factors—no matter how much they may increase the punishment—may be found by the judge. *This would mean, for example, that a judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it—or of making an illegal lane change while fleeing the death scene. Not even Apprendi's critics would advocate this absurd result.* The jury could not function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something

> wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish.

*Id.* at 307–08 (emphasis added) (citation omitted).

This case is Justice Scalia's absurd result that *Apprendi* prohibits. Davison was charged with murder in the first degree. With respect to this charge, the jury was instructed that the State had to prove, among other things, Davison caused the death of Demarcus Chew. The jury was also instructed on the lesser included offenses of murder in the second degree, voluntary manslaughter, and involuntary manslaughter. With respect to each of these lesser included offenses, the jury was instructed the State had to prove, among other things, Davison caused the death of Demarcus Chew. The jury did not find Davison guilty of these charges and instead found Davison guilty of assault causing serious injury and conspiracy to commit a forcible felony. Neither of these offenses required the jury to find Davison caused the death of another, nor is any such finding reflected in the jury's verdict. Even though the jury acquitted Davison of murder and three lesser included offenses requiring the State to prove Davison caused the death of another, the district court nonetheless found Davison caused the death of another and imposed a $150,000 punishment on the defendant pursuant to Iowa Code section 910.3B. As in Justice Scalia's absurd and prohibited result, here the district court imposed a financial penalty on Davison for a homicide offense even though the jury found him guilty only of an assault. This is precisely the kind of jury circumvention *Apprendi* was intended to avoid. *See S. Union Co.*, 567 U.S. at 350 (stating *Apprendi* applies broadly to "prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or

'punishment[s]' " (alterations in original)); *Apprendi*, 530 U.S. at 482–83 (noting the "historic link between verdict and judgment" and denouncing "a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone" (emphasis omitted)).

With this understanding, I join the court's opinion.

Oxley, J., joins this concurring opinion.

**McDERMOTT, Justice (concurring specially).**

I join today's opinion except for the part relying on legislative history. The majority analyzes whether the statute's phrase "a felony in which the act or acts committed by the offender caused the death of another person" requires that the death-causing acts be part of the elements of the felony itself. Iowa Code § 910.3B (2017). The majority correctly construes the statute's use of past tense language (*caused* vs. *cause*) as requiring that the death of another person need *not* be one of the elements of the felony. But instead of ending the inquiry there, the majority goes on to evaluate the legislative history of the statute, citing to the bill "explanation" that initially accompanied the legislation when it was introduced as indicative of "the legislature's view." I believe that this detour into the legislative history is unnecessary and, in fact, undermines the majority's otherwise sound textual analysis.

"The law *is* what the law *says*." *Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 279 (1996) (Scalia, J., concurring in part and concurring in the judgment). That statement might seem so obvious that it borders on banal. But to explain the grounds for why we must reject legislative history as an interpretive tool, it's important to consider what the law is—and is not.

The law is not the statements or beliefs of particular legislators or legislative staff. *State v. Macke*, 933 N.W.2d 226, 233 (Iowa 2019) ("[W]e must apply the new enactment as written, not by what the legislature might have said or intended."). A statute's meaning "is to be found not in the subjective, multiple

mind of Congress but in the understanding of the objectively reasonable person." Frank H. Easterbrook, *The Role of Original Intent in Statutory Construction*, 11 Harv. J.L. & Pub. Pol'y 59, 65 (1988). Legislators of varying viewpoints—aware that courts might cite to legislative history in potential future cases involving the interpretation of the legislation—may seek to stack the deck with suitable "legislative history" for just such a purpose. Justice Scalia, perhaps the foremost critic of using legislative history in construing statutes, deemed it "less that the courts refer to legislative history because it exists than that legislative history exists because the courts refer to it." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 34 (1997) [hereinafter Scalia].

The practice of mining legislative history for statements that support a favored viewpoint (while almost always disregarding statements that support disfavored ones) diverts us from our judicial charge: giving effect to the text that lawmakers have adopted and that the people are entitled to rely on. With most important legislation, "the legislative history is extensive, and there is something for everybody." Scalia at 36. Judges, who should be constrained by the statutory text, thus open a path to "manipulate the meaning of a law by choosing which snippets to emphasize." *In re Sinclair*, 870 F.2d 1340, 1343 (7th Cir. 1989) (Easterbrook, J.).

Reliance on legislative history is built on the flawed premise that when construing statutes we are looking for the intent of the legislature rather than the meaning of a statute's text. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 375 (2012) [hereinafter Scalia & Garner]. But

legislative bodies do not possess some freestanding "intent" or "views" that courts can divine. *See State v. Mathias*, 936 N.W.2d 222, 239 (Iowa 2019) (Mansfield, J., dissenting) ("Statutory interpretation is not a quest for legislative intent."). For this reason, "[w]e do not inquire what the legislature meant; we ask only what the statute means." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 396–97 (1951) (Jackson, J., concurring) (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation, in Collected Legal Papers* 203, 207 (1920)).

A broad body of legal canons have formed around how courts should construe statutes. *See generally* Scalia & Garner. But no similar canons exist for all the disparate legislative histories one might find. "Since there are no rules as to how much weight an element of legislative history is entitled to, it can usually be either relied upon or dismissed with equal plausibility." Scalia at 35–36. Proper constraints on judicial decision-making that derive from the text— constraints consistent with, if not critical to, the nature of our democratic system—come undone when we resort to legislative history as an interpretive tool.

In Iowa, a bill must pass both the senate and house of representatives and be signed by the Governor to become law. Iowa Const. art. III, §§ 15–16. The preamble and bill explanation are attached at the beginning and end of a bill when introduced, but neither part is voted on, and neither becomes part of our codified law. *See, e.g.*, *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 454 n.3 (Iowa 2014) ("The legislature enacts the bill—not the accompanying explanation."). Ours is a system of written laws, and people can readily understand that they

will be bound by a law's actual text. But people have no way of knowing that they might also be bound by explanatory passages that a sponsoring legislator includes when the bill is introduced in the legislature, or bound by some individual legislator's statements uttered in the course of debate on a bill. And, with any particular piece of legislative history, people "would not know any way of anticipating what would impress enough members of the Court to be controlling" in any event. *Schwegmann Bros.,* 341 U.S. at 396 (Jackson, J., concurring). Our interpretation should be based on what the text says and fairly implies without resort to extraneous "history," which neither controls nor clarifies the law's meaning.

I otherwise fully join the court's opinion on all the issues presented.

**WATERMAN, Justice (concurring in part and dissenting in part).**

I join the court's opinion except for part III.B. I respectfully dissent from the court's holding extending *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny to victim restitution awards. Our court is the first appellate court in the nation to do so. Only two justices of the United States Supreme Court have concluded that *Apprendi* should be applied to require a jury to find all the facts needed to justify a restitution order. *Hester v. United States*, 139 S. Ct. 509, 509–11 (2019) (Gorsuch, J., joined by Sotomayor, J., dissenting from the denial of certiorari). Seven justices declined to take the bait. *See id.* at 509 (mem.). Every federal circuit court of appeals to reach the issue has refused to extend *Apprendi* to victim restitution awards. So too has every state appellate court to reach the issue. I would follow the wisdom of that crowd.

The court correctly construes Iowa Code section 910.3B (2017) to allow the award of $150,000 in victim restitution for Chew's death even though the crimes of conviction did not include causing his death as an element. In my view, the legal effect of the jury's conspiracy verdict also satisfies *Apprendi*. *See, e.g.*, *United States v. Garcia-Castillo*, 127 F. App'x 385, 388–90 (10th Cir. 2005) (rejecting *Apprendi* challenge to restitution award because the defendant, as a "conspiracy participant is legally liable for all reasonably foreseeable acts of his or her coconspirators in furtherance of the conspiracy" (quoting *United States v. Brewer*, 983 F.2d 181, 185 (10th Cir. 1993))).

The jury convicted Caesar Davison of felony assault causing serious injury and conspiracy to commit murder. Davison joined a death squad to hunt down Demarcus Chew, who literally had a bounty on his head. It is undisputed that Chew was shot to death. Mission accomplished. The conspiracy was a success. It doesn't matter whether Davison fired a fatal shot, a mere flesh wound, or missed, because the conspiracy conviction makes him liable for the acts of his coconspirators as a matter of law. *See* Iowa Code §§ 703.1 ("All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals."), .2 ("When two or more persons, acting in concert, knowingly participate in a public offense, each is responsible for the acts of the other done in furtherance of the commission of the offense . . . .").

Iowa has long recognized criminal liability for the acts of coconspirators. *State v. Kneedy,* 3 N.W.2d 611, 616 (Iowa 1942) ("Where two or more persons combine to accomplish an unlawful purpose, each is responsible for the act of another which is a probable consequence of carrying out the unlawful design, even though the particular crime committed was not a part of that design." (citing *State v. McCahill*, 33 N.W. 599, 601–02 (Iowa 1887))).

*United States v. Garcia-Castillo* is illustrative. There, the defendant was convicted of conspiracy to rob a train, and the district court ordered him to pay restitution for personal injuries inflicted by his coconspirators. *Garcia-Castillo*, 127 F. App'x at 386, 388. He objected under *Apprendi* and its progeny, arguing the absence of a jury finding that he caused those injuries. *Id.* at 388. The United

States Court of Appeals for the Tenth Circuit affirmed the restitution order, holding that he was legally liable for the acts of his coconspirators, without the need for a jury verdict on the restitution award. *Id.* at 388–89; *see also United States v. Sawyer,* 825 F.3d 287, 294–97 (6th Cir. 2016) (affirming entire $10,688,576 restitution award and rejecting the defendant's *Apprendi* challenge and argument "that the district court erred in assessing the *total* losses attributed to the conspiracy jointly and severally against him and his co-defendants rather than assessing an amount keyed to his specific role in the conspiracy"); *United States v. Bengis,* 783 F.3d 407, 413–14 (2d Cir. 2015) (conditionally affirming restitution award based on acts of coconspirators); *United States v. Castillo,* 186 F. App'x 25, 27 (2d Cir. 2006) ("[A] restitution order may hold a defendant liable for 'the reasonably foreseeable acts of all co-conspirators', even though the jury acquitted the defendant as to some aspects of the conspiracy." (quoting *United States v. Boyd,* 222 F.3d 47, 51 (2d Cir. 2000) (per curiam))); *State v. Arnett,* 496 P.3d 928, 931–33 (Kan. 2021) (rejecting Sixth Amendment *Apprendi* challenge to restitution award of $33,248 jointly and severally with co-defendants based on conviction for conspiracy to commit burglary, even though Arnett only obtained $200 for her part in the burglaries). The court and the concurrences cite no case to the contrary addressing *Apprendi* and the law of conspiracy.

Iowa's criminal restitution statute is linked to civil tort law. *State v. Roache,* 920 N.W.2d 93, 100 (Iowa 2018); *see also* Iowa Code §§ 910.1(6) (allowing restitution in the amount that "a victim could recover against the

offender in a civil action arising out of the same facts or event"), .8 (providing that restitution payments are set off against a civil judgment); *State v. Richardson*, 890 N.W.2d 609, 623 (Iowa 2017) (payments on civil wrongful death judgments credited against criminal restitution ordered under section 910.3B). Under black letter law, Davison is culpable for the acts of his coconspirators in furtherance of the goal of the conspiracy. *See Anderson v. Anderson Tooling, Inc.*, 928 N.W.2d 821, 828 (Iowa 2019) (holding the district court "correctly applie[d] our rule of law, holding coconspirators jointly and severally liable for damages resulting from the conspiracy"); *see also* Restatement (Third) of Torts: Apportionment of Liab. § 15 (Am. L. Inst. 2000) ("When persons are liable because they acted in concert, all persons are jointly and severally liable for the share of comparative responsibility assigned to each person engaged in concerted activity."). Davison's crime of conviction, conspiracy to commit murder, legally and factually caused Chew's death. Based on that jury verdict, the district court correctly ruled that Davison is jointly and severally liable for Chew's death and for restitution to the victim's estate or heirs. No separate jury finding that he personally caused the death is required to order restitution under section 910.3B.

Davison and the court rely in part on *Southern Union Co. v. United States*, which extended *Apprendi* to criminal fines. 567 U.S. 343, 346–48, 360 (2012). But that case did not address victim restitution. Unlike a criminal fine paid to the government, the restitution award is *compensation* payable to the deceased victim's estate or heirs. *See Richardson*, 890 N.W.2d at 623. The $150,000

restitution award under Iowa Code section 910.3B does not move up or down based on any factual finding by the judge or jury as to the value of the victim's life. Rather, that amount is fixed by the legislature and therefore, by definition, is within the statutory range. And as the court reiterates today, "$150,000 is [neither] extraordinary, [n]or even generous compensation for the death of a person."

The theory of *Apprendi* is that the Sixth Amendment to the United States Constitution requires a jury to find any fact that triggers an *increase* in a criminal defendant's "statutory maximum" (or minimum) sentence. 530 U.S. at 490. That theory is inapplicable here because the jury verdict on the crime of conviction in this felony death case triggers the automatic $150,000 victim restitution award. Because the award is set at the legislatively prescribed statutory amount, there is no "increase" based on a factual finding by the court that should have been made by a jury. The California Supreme Court for that very reason declined to extend *Apprendi* to victim restitution awarded by the court within ranges set by the legislature. *People v. Chhoun*, 480 P.3d 550, 590 (Cal. 2021) (holding that no *Apprendi* concerns are raised when restitution is set "within the prescribed statutory range"). I see no purpose for requiring an additional jury finding to support this restitution award under section 910.3B.

Today's unprecedented extension of *Apprendi* to victim restitution is not justified by characterizing such awards as partly punitive. The court, as it must, acknowledges that this victim restitution award is compensatory, and is effectively a substitute for a civil wrongful death award. *See Richardson*, 890

N.W.2d at 623; *State v. Klawonn*, 609 N.W.2d 515, 520 (Iowa 2000) (en banc) ("[Restitution] serves a remedial purpose in compensating the victim's estate.").[6] "Restitution both 'serves to protect the public by compensating victims for criminal activities, [and] also serves to rehabilitate the defendant.'" *State v. Waigand*, 953 N.W.2d 689, 694 (Iowa 2021) (alteration in original) (quoting *State v. Izzolena*, 609 N.W.2d 541, 548 (Iowa 2000) (en banc)). "[Restitution] forces the offender to answer directly for the consequences of his or her actions." *Id.* (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)). Thus, the overriding purpose of restitution is victim compensation with a secondary goal of offender rehabilitation to instill responsibility.

True, we have described the victim restitution award as having "punitive characteristics." *Richardson*, 890 N.W.2d at 622. But we said so in the context of applying precedent under the Eighth Amendment Excessive Fines Clause, which can be violated by an award in a criminal case that is "grossly disproportional to the gravity of the defendant's offense." *Id.* (quoting *Izzolena*, 609 N.W.2d at 549). We have repeatedly rejected Eighth Amendment challenges to the $150,000 restitution award in felonious death cases. *Id.* at 624–25; *Izzolena*, 609 N.W.2d at 551. Neither Davison nor the court rely on the Eighth Amendment. Yet our court today photoshops words from Eighth Amendment jurisprudence to this Sixth Amendment setting. What's missing here is any

---

[6]Neither the court nor Davison rely on the Seventh Amendment right to a jury trial in civil cases.

precedent or sound basis for doing so. Perhaps that's why our court stands alone on this issue.

Our court of appeals correctly rejected an *Apprendi* challenge in *State v. Turner*, No. 15–2191, 2016 WL 7393894, at *2–3 (Iowa Ct. App. Dec. 21, 2016). Turner fatally stabbed his brother and entered an *Alford* plea to attempted murder. *Id.* at *1. The sentencing court ordered restitution of $150,000 under Iowa Code section 910.3B(1). *Id.* Turner appealed, relying on *Apprendi* to argue "the assessment violates the [Sixth Amendment] because he neither admitted he caused [his brother's] death nor was there a jury finding that he caused his death." *Id.* at *1–2. In upholding the restitution award, the court of appeals followed federal precedent:

> Even if *Apprendi* covers all forms of punishment, restitution's not "clearly" punishment . . . .
>
> . . . Restitution carries with it no statutory maximum; it's pegged to the amount of the victim's loss. A judge can't exceed the non-existent statutory maximum for restitution no matter what facts he finds, so *Apprendi*'s not implicated.

*Id.* at *3 (omissions in original) (quoting *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013)).

The Ninth Circuit, joining other circuit courts, unequivocally held "*Apprendi* doesn't apply to restitution." *Green*, 722 F.3d at 1151; *see also United States v. Garza*, 429 F.3d 165, 170 (5th Cir. 2005) (per curiam) ("We agree with our sister Circuits, who have uniformly held that judicial fact-finding supporting restitution orders does not violate the Sixth Amendment."); *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005) ("Restitution is designed to make

victims whole, not to punish perpetrators; it is essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." (citation omitted)); *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000) ("A civil remedy included with a criminal judgment does not make it a 'penalty for a crime' that must be established beyond a reasonable doubt; otherwise it would not be possible to apply the law of preclusion (or grant summary judgment) in an ordinary civil suit seeking restitution. It follows that *Apprendi* does not affect the calculation of restitution."). In *United States v. Wooten*, the Tenth Circuit stated, "Even if the court were to conclude that [the restitution order] is a criminal penalty, Mr. Wooten does not contend that the restitution order exceeds the value of the damaged property, and it is for that reason that *Apprendi* does not apply here." 377 F.3d 1134, 1145 (10th Cir. 2004). Similarly, Davison does not contend that $150,000 exceeds the value of the victim's life.

Courts offer varying rationales applicable here when holding *Apprendi* doesn't apply to restitution. The restitution award under 910.3B(1) is primarily compensatory rather than "clearly punitive." The $150,000 restitution award doesn't exceed the value of the loss and is within the legislatively prescribed statutory range for the conviction based on the jury verdict. No additional jury finding is necessary.

> [In *Apprendi* and its progeny] all the facts found by trial judges that rendered the sentences unconstitutional [under the Sixth Amendment] were facts that made the defendant's offense more serious or culpable and hence exposed the defendant to a greater sentencing range.

In contrast, a court's factfinding regarding restitution is limited to determining the victim's actual damages and the defendant's ability to pay. When a sentencing court concludes the punishment warrants restitution, it does so based only on the fact of conviction. As federal courts have noted, it is the conviction that authorizes restitution.

*State v. Clapper*, 732 N.W.2d 657, 663 (Neb. 2007) (per curiam).

Davison argues the $150,000 restitution can't be awarded without a jury finding that he personally killed the victim. The *United States v. Green* court specifically rejected this "trigger" argument: that *Apprendi* requires a jury determination "of *whether* restitution is triggered at all" even if the court can then determine the amount. 722 F.3d at 1149. In affirming a $250,000 restitution order, the court in *Green* adhered to its categorical precedent holding that "restitution is 'unaffected' by *Apprendi*." *Id.* at 1148–49. The *Green* court added, "We further hesitate to adopt the trigger argument because the Greens can't cite any case—state or federal—that has accepted it, and because the two circuits that considered it, rejected it." *Id.* at 1149. Davison suffers the same shortcoming. The majority confronts *Green*, but errs by not following its Sixth Amendment analysis.

Over eleven years ago in *State v. Jenkins*, we observed that "[m]ost federal authorities reject the requirement of a jury trial for criminal restitution." 788 N.W.2d 640, 643 (Iowa 2010). That hasn't changed. *See, e.g., United States v. Vega-Martínez*, 949 F.3d 43, 54–55 (1st Cir. 2020); *Sawyer*, 825 F.3d at 297; *United States v. Thunderhawk*, 799 F.3d 1203, 1209 (8th Cir. 2015); *Bengis*, 783 F.3d at 411–13; *United States v. Rosbottom*, 763 F.3d 408, 419–420 (5th Cir. 2014); *Green*, 722 F.3d at 1148–1151; *United States v. Wolfe*, 701 F.3d 1206,

1215–1217 (7th Cir. 2012); *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012); *see also United States v. Geovanni*, No. 19–11044, 2022 WL 291761, at *11 (11th Cir. Feb. 1, 2022) ("Geovanni argues that the imposition of restitution violated his Sixth Amendment right to a jury trial because there was no jury finding on the facts needed to support the restitution order. But, as Geovanni acknowledges, this argument is foreclosed by our decision in *Dohrmann v. United States*." (citation omitted)); *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006); *United States v. Leahy*, 438 F.3d 328, 335–39 (3d Cir. 2006) (en banc); *Wooten*, 377 F.3d at 1143–45; *United States v. Bauer*, No. 3:19 CR 490, 2022 WL 822089, at *1 (N.D. Ohio Mar. 11, 2022) ("[T]he Sixth Circuit has 'already squarely held that restitution orders are not affected by the Supreme Court's ruling in *Apprendi v. New Jersey* because the restitution statutes do not specify a statutory maximum.' " (quoting *United States v. Churn*, 800 F.3d 768, 782 (6th Cir. 2015))).

Yet our court today strains to evade federal constitutional precedent such as *Green* based on perceived differences between the federal restitution statutes in which the district court determines the amount of restitution, and Iowa's fixed $150,000 award for the victim's death. But the common denominator in both the federal and Iowa statutes is that the restitution award does not *increase* the criminal penalties beyond what the legislature already prescribed. It makes no constitutional difference under the Sixth Amendment whether the legislature fixes the amount of restitution for a victim's death or the court, so long as the

award falls within the maximum amount the legislature permits for the crime of conviction.

I would follow the federal and state caselaw uniformly holding the Sixth Amendment requires no jury finding on causation or the amount awarded for victim restitution when, as here, the legislature required victim restitution for the crime of conviction. In *State v. Arnett*, the Kansas Supreme Court recently reached that conclusion, noting "at least 11 of 13 federal United States Circuit Courts of Appeal have refused to extend *Apprendi* and its progeny to orders of restitution, not to mention the many state courts which have followed suit." 496 P.3d at 933.

Our court attempts to distinguish several contrary cases from sister state courts while obscuring the reality that state courts overwhelmingly hold *Apprendi* is inapplicable to restitution. *See, e.g.*, *State v. Leon*, 381 P.3d 286, 289–90 (Ariz. Ct. App. 2016) (noting the absence of authority supporting the defendant's argument that *Southern Union* extends *Apprendi* to restitution); *Chhoun*, 480 P.3d at 590 ("[T]his mandatory restitution fine 'is properly understood as part of the maximum penalty statutorily authorized by a jury's finding that the defendant is guilty of a felony.' " (quoting *People v. Wall*, 404 P.3d 1209, 1228 (Cal. 2017))); *People v. Wasbotten*, 169 Cal. Rptr. 3d 878, 879 (Ct. App. 2014) ("[D]irect victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits. It is not increased 'punishment.' "); *People v. Smith*, 181 P.3d 324, 327 (Colo. App. 2007) ("A number of state courts have similarly concluded that *Apprendi* does not apply to

restitution orders because the states' restitution statutes do not set a maximum restitution amount that can be ordered."); *Smith v. State*, 990 N.E.2d 517, 520–22 (Ind. Ct. App. 2013) (holding *Apprendi* is not violated when "the trial court based its restitution order wholly on the acts underlying Smith's conviction"); *State v. Brown*, 498 P.3d 167, 178 (Kan. 2021) ("Kansas' criminal restitution statutes do not trigger the Sixth Amendment protections identified in *Apprendi* and its progeny."); *Commonwealth v. Denehy*, 2 N.E.3d 161, 174 (Mass. 2014) ("Because we treat restitution as an entirely judicially determined penalty, lacking any legislative parameters, the mandate of *Apprendi* does not apply."); *State v. Maxwell*, 802 N.W.2d 849, 852 (Minn. Ct. App. 2011) ("Based on the unmistakable consensus of the persuasive authority, we conclude that . . . *Apprendi* [is] inapplicable to restitution orders."); *Clapper*, 732 N.W.2d at 663 ("But the critical distinction is that for restitution, the sentencing court is not required to make any additional finding of fact regarding the defendant's conduct or offense."); *State v. Martinez*, 920 A.2d 715, 721–22 (N.J. Super. Ct. App. Div. 2007) (relying on federal precedent to hold *Apprendi* does not apply to restitution); *People v. Horne*, 767 N.E.2d 132, 139 (N.Y. 2002) (holding *Apprendi* does not apply to restitution because "a sentencing court is not increasing the maximum sentence available when it makes factual determinations affecting restitution but is merely issuing a sentence within the authorized statutory range"); *State v. Deslaurier*, 371 P.3d 505, 509 (Or. Ct. App. 2016) ("Restitution in the full amount of the victim's economic damages does not exceed the 'prescribed statutory maximum' because restitution for the full amount of the

victim's economic damages is the only 'restitution outcome that is consistent with a jury's verdict.' " (quoting *State v. Ramos*, 340 P.3d 703, 706–07 (Or. Ct. App. 2014))). Our court today declines to follow that body of precedent, without citing a single decision to the contrary applying *Apprendi* to a victim restitution award.

For these reasons, I am unable to join part III.B of the court's opinion.

Christensen, C.J., joins this concurrence in part and dissent in part.